STATE of Missouri, Respondent,

v.

Benny Louis RASPBERRY, Appellant.

No. 54255.

Supreme Court of Missouri,
Division No. 1.

April 13, 1970.

John C. Danforth, Atty. Gen., Michael L. Boicourt, Asst. Atty. Gen., Jefferson City, for respondent.

J. Arnot Hill, Legal Aid and Defender Society of Greater Kansas City, Kansas City, for appellant.

KENNETH R. LEWIS, Special Judge.

Defendant, Benny Louis Raspberry, was charged by indictment with murder in the first degree for allegedly inflicting upon one James Willie Graham fatal gunshot wounds on February 3, 1968, in Jackson County, Missouri. Defendant was found guilty by a jury as charged and sentenced to life imprisonment.

It is not contended on this appeal that the evidence was insufficient to sustain a conviction. Therefore, the statement of the facts need only be in a summary form. The evidence on behalf of the state was that on the evening of February 2, 1968, at approximately nine o'clock, the deceased, James Willie Graham, and a companion, one Ulysses Stewart, entered a bar known as The Last Roundup on Twelfth Street in Kansas City, Missouri. At about eleven o'clock that evening the defendant appeared outside the bar and was seen looking in the window. On one occasion when Graham . went outside to talk to a female acquaintance, the defendant was overheard saying that he was "going to kick James' ass." A brief argument ensued, the nature of which is not disclosed by the record, and then Graham went back into the tavern. The defendant was seen outside the bar by several witnesses at various times later that evening and, in view of subsequent events, the jury could have reasonably concluded that the defendant was keeping Graham under surveillance. Graham and Stewart remained at The Last Roundup until it closed at about 1:30 a. m. on the following morning. They then proceeded on foot to a nearby restaurant called the Chicken Shack. The defendant apparently followed as he was next seen standing on the sidewalk outside the Chicken Shack. After placing an order, Graham walked out on the sidewalk and approached a young boy identified in the evidence only as Tomcat. The defendant was standing just a few feet away as Graham talked to this boy. Without any words passing between them, the defendant suddenly pulled a handgun and shot Graham in the face from a dis-

tance of about five feet. Graham turned and made an effort to get back into the Chicken Shack when he was shot a second time in the back of the head. Graham fell mortally wounded in the doorway of the restaurant and died the following morning. The motive for the killing is not reflected by the evidence.

The only testimony for the defense was that of the defendant. He testified that he was standing outside the Chicken Shack when Graham came out and asked the boy called Tomcat for money to buy a drink. The defendant claimed that Graham then poked Tomcat with a club he was carrying. Thereupon, according to the defendant, Tomcat backed off, put his hand in his pocket and said, "I am not going to give you no more money." The defendant testified that he then heard two shots and Graham fell to the sidewalk. It was denied by the defendant that he had threatened the deceased.

■ The defendant's first contention is that the court erred in overruling his motion to discharge the jury because of alleged prejudicial statements of the prosecuting attorney in his closing argument. The defendant attacks several portions of the prosecutor's closing argument, but in only two instances did the defendant properly preserve the alleged errors for appellate review by including them in his motion for new trial. We are precluded from considering that part of the prosecutor's closing argument which was not included in the motion for new trial regardless of objections made at the trial. Supreme Court Rule 27.20, V.A.M.R.; State v. Laster, 365 Mo. 1076, 293 S.W.2d 300.

The first portion of the prosecutor's closing argument for which the alleged error of the trial court was properly preserved in the motion for new trial was as follows: "Let us make believers out of these vicious murderers. Let's put a stop to it. Not for a feather in my cap; for the sake of your children, and for your wives, and for your families, for the sake of the people of the community." Counsel for defendant objected for the reason that the argument was an attempt to personalize the case with the jury. He moved that the jury be instructed to disregard the statement and further moved for a mistrial. The trial judge sustained the objection, instructed the jury to disregard the statement, but overruled the motion to declare a mistrial and discharge the jury.

The second portion of the state's closing argument complained of and preserved in the defendant's motion for new trial was: " * * * I hope you don't put him back on the streets. I hope you give him sixty, or seventy, or eighty or ninety years, so he can't do this again." The defendant objected to this argument on the ground that the statement "so he can't do this again" was a comment on the character of the defendant when his character had not been put at issue. Defendant did not place his character at issue when he testified. Defendant's objection was sustained and the jury was instructed to disregard the prosecutor's statement. The motion to declare a mistrial was overruled.

■ At the outset we must agree that the prosecutor's argument was improper in the two instances recited. It is well settled that the prosecutor may not personalize his argument to the jury. The jury must act objectively, without fear or prejudice. They must determine the guilt or innocence of the defendant from the evidence and it is improper for the prosecutor to taint their judgment with suggestions of personal danger to them or their families if the defendant is acquitted. See State v. Groves, Mo., 295 S.W.2d 169. It has likewise been held improper for the prosecutor to argue with respect to the defendant's character or criminal proclivities and the necessity of deterring him, not as an example to others, but to prevent the defendant on trial from committing further crimes. See State v. Mobley, Mo., 369 S.W.2d 576. In other words, a defendant is on trial for what he has or has not done and not for what he might do. This is not to say that the

prosecutor may not argue the necessity of law enforcement and ask for a severe penalty *as a deterrent to others*. See State v. Laster cited above.

While the prosecutor in this case in some degree exceeded the bounds of legitimate argument, what we are called upon by defendant to hold is that the trial court erred in not declaring a mistrial because of these statements of the prosecutor. In examining the cases cited to us by the defendant we find them to be distinguishable. See State v. Groves and State v. Mobley cited above and also State v. Tiedt, 357 Mo. 115, 206 S.W.2d 524. These cases involved situations wherein the trial court overruled the objections and failed to instruct the jury to disregard the objectionable argument. In other words, the court took no affirmative action in the cases cited to purge from the minds of the jurors the improper argument. That is not the case before us. Here, the court properly sustained the objections and in each instance instructed the jury to disregard the argument. As was stated by this court in the Mobley case (369 S.W.2d 582 [7]) : "We would have a somewhat different question here if the court had taken some action in connection with the erroneous parts of the argument; we might then need to determine whether the drastic remedy of a mistrial was required." Every instance of a prosecutor exceeding the limits of legitimate argument is not a cause for declaring a mistrial. The declaration of a mistrial is, as stated, a drastic remedy and should be exercised only in extraordinary circumstances where the prejudicial effect can be removed in no other way. See State v. Smith, Mo., 431 S.W.2d 74; State v. James, Mo., 347 S.W.2d 211; State v. Camper, Mo., 391 S.W.2d 926. This determination rests largely within the discretion of the trial judge who observed the incident and can best gauge its prejudicial effect upon the jury. See State v. Smith cited above. The function of this court is to determine whether as a matter of law the trial court abused its discretion in refusing to declare a mistrial. The portions of the prosecutor's closing argument complained of on this appeal, while improper, were certainly not extreme. Much stronger language has been allowed by this court in a closing argument. See State v. Laster, 365 Mo. 1076, 293 S.W.2d 300, 306. We cannot under the circumstances presented hold as a matter of law that the trial court abused its discretion in not declaring a mistrial.

We shall consider next the contention that the trial court erred in not sustaining defendant's motion for new trial on the ground that a member of the jury received information from his wife during the trial which was calculated to prejudice the juror against the defendant.

The trial of this cause commenced on June 4, 1968, and the jury returned a verdict on the evening of June 6, 1968. This being a capital case the jury was not allowed to separate. The incident giving rise to the defendant's claim of error occurred at the conclusion of the second day of trial. Before recessing for the night, the court properly admonished the jury not to discuss the case during the recess among themselves or with third persons. The jury was then taken from the courtroom in charge of the bailiff to be conducted to a hotel for the night. In the hallway outside the courtroom one or two jurors approached the trial judge and asked permission to telephone their homes for the purpose of advising their families that they would not be home again that night. Upon receiving these requests, the court conferred with the attorneys for both sides. Defendant's counsel did not object at this time to the allowance of these telephone calls and in fact the record indicates that he agreed that they be allowed. The jurors were permitted to use the telephone in the clerk's office with the bailiff present.

At the hearing held on defendant's motion for new trial, the defendant called as a witness Mrs. Robert Gattenby, the wife of the foreman of the jury. Mrs.

Gattenby testified that her husband telephoned her on June 5, 1968, and that during the conversation she had "probably" told him of the assassination of Senator Robert Kennedy which had taken place earlier that day. The defendant asserts on this appeal that the receipt by juror Gattenby of the news of the Senator Kennedy assassination worked to prejudice the juror against the defendant who was on trial for killing a man in a similar manner. The defendant's reasoning seems to be that the assassination of such a prominent political figure would have given rise to a vindictive attitude on the part of a juror toward all persons accused of like offenses. The defendant's motion for new trial did not specifically refer to the matter of the Kennedy assassination. The portion of the motion concerning the telephone call of juror Gattenby dealt with other allegedly prejudicial information received at the time of the call and the further fact that the call had not been monitored by the court. Juror Gattenby did not testify at the hearing on the motion for new trial, but by affidavit he denied the allegations in defendant's motion concerning the receipt by him of prejudicial information during the telephone conversation with his wife. He further denied in the affidavit that any prejudicial information had been passed on to the other members of the jury. Since the affidavit was filed in response to only those matters raised in the motion for new trial, it contained no reference to the Kennedy assassination. Supreme Court Rule 27.20 (a), V.A.M.R., requires that the specific grounds for a new trial must be "set forth in detail and with particularity" in the motion for new trial, which the defendant failed to do with reference to the information concerning the Kennedy assassination. The alleged errors actually complained of in the motion for new trial were not pursued on this appeal and are considered abandoned. These facts could be dispositive of this point. However, since the point presented on appeal raises a question of denial of a fair trial, we will consider it on its merits.

The defendant states at one point in his brief that he is not complaining about separation as such, but rather that prejudicial information was imparted to one of the jurors. Nonetheless, the defendant has cited several cases as authority for the proposition that unauthorized communications between jurors and third persons during the trial of a felony case are forbidden. See State v. Malone, 333 Mo. 594, 62 S.W.2d 909; State v. Jones, 363 Mo. 998, 255 S.W.2d 801; State v. Quinn, Mo., 405 S.W.2d 895. However, what we are dealing with in the case at bar is a situation wherein the trial court authorized the use of the telephone, without objection by the defendant, prior to the submission of the case to the jury for deliberation. The general rule against telephone use by jurors during the trial of a felony case does not apply when the telephone calls are authorized by the court and made under the supervision of the court. State v. Bayless, 362 Mo. 109, 240 S.W.2d 114. Nor does this rule apply when the defendant acquiesces in the allowance of such telephone use. State v. Gilmore, 336 Mo. 784, 81 S.W.2d 431. As was aptly stated in the Gilmore case at page 433 [5, 6]: " * * * If a defendant and his attorneys in such a case sit idly by and do not raise the question until in the motion for a new trial the point must be considered waived. This for the very good reason that a party to a lawsuit may not keep a matter of this kind in the background, gamble on a verdict, and in case it is against him bring forth the question for the first time and obtain a new trial." Under the facts of the instant case, we hold that the telephone call by juror Gattenby was not, in and of itself, improper.

The receipt by a juror of possibly prejudicial information during the trial of a felony case requires that the verdict be set aside unless the state affirmatively shows that the juror was not subject to improper influences. State v. Jones, 363 Mo. 998, 255 S.W.2d 801. In the case before us the state made this affirmative showing by the affidavit of juror Gattenby

which the trial court considered when it denied the defendant's motion for new trial. The matter of allowing a new trial for alleged misconduct of a juror is largely within the discretion of the trial court. State v. McDaniel, Mo., 392 S.W.2d 310. Therefore, what we are called upon to decide is whether the trial court abused its discretion in not granting a new trial. Simply stated, the defendant's contention is that the receipt by a juror during the trial of a felony case of information concerning a totally unrelated crime, standing alone, requires the granting of a new trial. Reason dictates otherwise. The purpose of the rule against communications is to prevent the jury from receiving information *about the case under consideration* which is not part of the evidence. There was certainly no connection between the Kennedy assassination and the instant case. We do not subscribe to the defendant's theory that the hysteria engendered by the assassination would cause a juror to react against a defendant on trial for a totally different offense. If the assassination had occurred the day before the trial commenced and all of the jurors had known of it, could the defendant claim prejudice and gain a new trial? We think not. We cannot hold as a matter of law that the trial court abused its discretion in not granting a new trial on this ground.

The remaining point concerns a comment made by the trial judge to the jury after the case had been submitted and the jury had deliberated for several hours without progress. At approximately 8:35 p. m. the court made the following statement to the jury: "There were a large number of witnesses that testified in this case, although this case itself was not what you might consider a lengthy one. You have been deliberating since approximately 11:30 this morning, with time out for lunch and supper. I will read you another instruction, gentlemen, at

this time." At this point the court read to the jury an instruction concerning the desirability of reaching a verdict, which instruction the defendant has not questioned on this appeal. The defendant contends that the oral statement by the court prior to giving the instruction was a prohibited comment on the evidence. The defendant points out that eleven witnesses testified for the state and none for the defense other than the defendant. It is asserted by the defendant that the jury could have inferred from the remarks of the court that the judge felt that they were taking an unreasonable length of time in arriving at a verdict when all of the testimony, except that of the defendant, had been in support of the state's case. The alleged inference was that the jury should return a verdict of guilty. We cannot sustain this contention.

It is improper for the trial judge to " 'intimate his opinion of the merits.' " State v. Keller, Mo., 344 S.W.2d 65, 68. He may, however, in stressing the importance of a verdict " 'detail to the jury the ills attendant on a disagreement' " and "unless the remarks made by the trial judge amount to coercion" they are permissible. State v. Stegall, Mo., 327 S.W.2d 900, 902. We cannot conclude that the comments of the court were in any way intended by the court or taken by the jury as comments on the evidence. It is inconceivable that the court's remarks coerced the jurors to act against their wills to arrive at a verdict of guilty. We hold that the comments herein were within the permissible limits of the trial judge's judicial prerogative and that the defendant was not prejudiced thereby.

Judgment affirmed.

HOLMAN, J., and HENLEY, Alternate Judge, concur.

SEILER, P. J., not sitting.