STATE of Missouri, Plaintiff-Respondent,

v.

James ELLINGER, Defendant-Appellant.

No. KCD 28661.

Missouri Court of Appeals,
Kansas City District.

Feb. 28, 1977.

Motion for Rehearing and/or Transfer
Denied April 15, 1977.

Application to Transfer Denied
May 10, 1977.

William G. Mays, II, Public Defender, Columbia, for defendant-appellant.

John C. Danforth, Atty. Gen., J. Michael Davis, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before SWOFFORD, P. J., PRITCHARD, C. J., and DIXON, J.

DIXON, Judge.

Defendant appeals his conviction and a court-imposed sentence of three years upon his conviction as a second offender of the offense of exhibiting a deadly weapon in a rude, angry and threatening manner. Defendant attacks the sufficiency of the evidence, the closing argument of the prosecutor as being a comment on the defendant's failure to testify and as implying the defendant was a threat to each juror if they failed to find the defendant guilty.

The question of sufficiency is raised by the defendant's motion in the trial court to enter a verdict notwithstanding the jury's verdict on the grounds of insufficiency of the evidence. *State ex rel. Ryan v. Holt*, 499 S.W.2d 821 (Mo.App.1973). The standard set forth in *Holt* requires that the sufficiency of the evidence be judged upon the same basis as in ruling on a motion for judgment on acquittal at the close of all the evidence. " '[T]he facts in evidence and the favorable inferences reasonably to be drawn therefrom must be considered in the light most favorable to the State, and evidence and inferences to the contrary are rejected.' " *State v. Colton*, 529 S.W.2d 919, 923 (Mo.App.1975).

So viewed, the evidence showed that the defendant and three of his friends entered a pizza restaurant and bar to play foosball in the bar portion of the premises. The manager inquired as to their ages and, upon determining that they were not 21, asked them to leave. Some discussion about their right to remain ensued, but, finally, the defendant started through the restaurant portion of the premises and on his way to the door picked up a glass and turned it over on the bar. There was some milk in

the glass. The manager then approached the defendant with the glass in his hand and, according to the manager's version, told the defendant that he did not want him to return to the premises if he was going to behave in that fashion. The defendant then pulled a knife from his pocket which was described by the witnesses as being a hunting knife with a blade four to six inches in length, a one-piece knife made of shiny steel, contained in the defendant's pocket within a sheath. The defendant held the knife in his hand with the point upward and towards the manager. The manager turned away from him to call the police. An off-duty assistant manager was also present, and he testified that after the manager turned his back the defendant made a motion towards the manager with the knife but that he stopped when the assistant manager touched his arm. The defendant then turned away from the manager towards the assistant manager and went into "kind of a defensive position." The defendant then left the restaurant, his friends having preceded him.

There was proof of a prior conviction of a felony of selling controlled substances and probation upon the sentence imposed upon that offense.

■ The defendant's attack as to sufficiency centers upon the weapon, the manner of its use, and the elements of the offense. As to the weapon, the defendant insists that there was no evidence that the weapon was deadly; admittedly, the information and the instruction require such a finding. Premising his argument on the statement from *State v. Campbell*, 507 S.W.2d 431, 433 (Mo.App.1974), "Proof of . . . deadliness must be shown only when the weapon used is not one mentioned in the statute." Reasoning that the statute does not mention hunting knives, defendant asserts there was no evidence to support that element of the charge. There is a two-fold answer to that argument. First, the jury was entitled to infer that a 4- to 6-inch long bladed hunting knife is capable of inflicting a deadly wound. In fact, in the archaic language of the statute, a "bow-ie knife" has a dictionary definition, "a large hunting knife." Webster's Third New International Dictionary (1966).

Second and most importantly, the defendant has overlooked the statutory language, "or other similar weapons," and *State v. Shannon*, 467 S.W.2d 4 (Mo.1971) which construed the language in the context of an ordinary jackknife being by the "manner of its use" a deadly weapon. *Shannon* further holds that:

"The sufficiency of the evidence turns not merely upon whether the knife was itself a deadly weapon. It turns upon the evidence of how it was used, . . ." *State v. Shannon, supra*, at 5.

Thus, the real issue is whether the use of the knife by defendant in the manner described in the evidence was such that the intention to utilize its deadly nature is a reasonable inference. This issue is intertwined with defendant's second attack upon the sufficiency of the evidence in which he asserts that there is no evidence to support the adjective language of the statute, "rude, angry or threatening manner." The State in this case had prudently framed the information in the conjunctive since the approved instruction, MAI–Cr 13.12, directs the submission to be in the *conjunctive*. Because of this, prior cases which have affirmed convictions on pleading or proof of less than all three elements may not now be safely relied on as stating the law under the statute which is in terms disjunctive. See *State v. Overshon*, 528 S.W.2d 142, 143 (Mo. App.1975) and *State v. Rice*, 522 S.W.2d 656, 659 (Mo.App.1975).

■ Having pleaded and submitted in the conjunctive, the State has undertaken the burden of showing by appropriate evidence all of the elements of rudeness, anger and threats. Reasonably construed, the evidence viewed in the light most favorable to the verdict does show a threat by the upward pointed blade of the knife, the rudeness of the encounter, and the defendant's apparent anger. The actions of the defendant are sufficient to support inferences supporting the submission of the elements of the offense. This evidence, when it is con-

sidered as bearing upon the manner of use of the hunting knife is also sufficient evidence of the deadliness of the weapon. *Shannon, supra.*

Defendant's second ground of error is that two separate portions of the State's argument are prejudicially erroneous. The matter is asserted as plain error under Rule 27.20. Defendant first asserts that a portion of the argument of the prosecutor is within the rule announced in *State v. Shuls*, 329 Mo. 245, 44 S.W.2d 94 (1931). The argument in *Shuls* which was held erroneous was held to be a direct reference to the failure of the defendant to testify. The substance of the argument was that there were only three witnesses including the defendant and the two other witnesses were the only ones to testify.

The argument here closely parallels that in *Shuls*. The State, arguing for its version of the occurrence, argued "only three" persons were in a position to "testify" as to what occurred in the confrontation between the defendant and the manager and the assistant manager. In the light of all the evidence, this could only refer to the defendant and the two witnesses for the State. The State then argued as follows:

"Bob Stevens, you heard his testimony. He told you that he asked the defendant to leave; and the defendant, that man right over there, James Ellinger, pulled a knife out of his pocket. If you don't think holding a knife like this is rude, threatening and angry, well, I just don't know what to say. Richard K. Havens said he came over here; and he described in detail what he saw. He said that Ellinger made kind of a half-hearted poke at Stevens."

In its context, the jury might have construed this as a direct reference to the failure of the defendant to testify. The identification of the three who could see and the recitation of the testimony of the manager, the description of the defendant's actions and then the recital of the evidence of the third witness make it possible that the failure of the third witness, the defend-

ant, to testify was referred to by the argument.

Standing by itself, this argument of the prosecution would make a difficult issue under the direct reference rule as construed in *State v. Rothaus*, 530 S.W.2d 235 (Mo. banc 1975). The defendant in this case, however, couples the attack on that portion of the argument with another portion of the argument, which the defendant attacks as a personalization of the jury and as arousing personal hostility against the defendant. The thrust of the argument is that the various challenged arguments had a cumulative effect in denying the defendant a fair trial.

The prosecutor introduced the challenged argument by arguing that this was a crime of violence, people can "get hurt," people can "get killed" in a situation like this in a family pizza parlor. He then asserted that:

"[W]hen James Ellinger, sitting over there, pulled that knife and backed out of that pizza parlor, he would have cut anybody that got in his way. He was fully intending to carve somebody up. You can draw the inference from the evidence that he intended to carve Bob Stevens up, . . . ."

Then after a short reference to the motives of the manager in running a proper place, the argument continued:

"Now, I don't think the people of Boone County want this kind of place to live in, I really don't. I know I don't. I don't think you do, and I don't think your friends and neighbors do. *You* want to be able *to go out and get a pizza at night* or to go to a restaurant and eat or go into a store and buy some clothes *without fear of getting carved up*, shot." (Emphasis added.)

■ This argument clearly directed the jury's attention to the possibility of personal harm to themselves from similar actions by the defendant if they failed to convict the defendant. An argument which arouses the personal hostility of the jurors toward the defendant, especially by implanting in them fear that acquittal of the defendant will endanger their own safety or

the safety of some members of their family is erroneous. *State v. Groves,* 295 S.W.2d 169, 174 (Mo.1956); *State v. Tiedt,* 357 Mo. 115, 206 S.W.2d 524, 526 (Banc 1947); *State v. Heinrich,* 492 S.W.2d 109 (Mo.App.1973). Such an argument, as well as an argument directed to the failure of the defendant to testify, affects substantial constitutional rights of the defendant under Rule 27.20. *Heinrich, supra,* and *Shuls, supra.* The issue remains in this case to determine if this error in argument resulted in manifest injustice.

The evidence recited in the earlier portion of this opinion was recited in accordance with the rule respecting the sufficiency of the evidence and thus ignored the evidence favorable to the defendant and the inferences therefrom. On the issue now presented as to whether manifest injustice has appeared, the touchstone of that inquiry is a consideration of all of the evidence in the case and any other facts which may indicate the prejudicial effect of the error. There was evidence in this case by witnesses for the defendant that the occurrence in question was radically different from that described by the State's witnesses. The companions of the defendant testified that there was no milk spilled from the glass, that the manager was angry and bellicose and that he picked up the glass which the defendant overturned and threatened the defendant with the glass, either offering to shove it down his throat or break it and cut his throat with it. There was evidence, if believed by the jury, that the defendant was at that time backed against a counter by the manager who was in great anger at the moment.

The jury in this case began its deliberations sometime around 4:00 in the afternoon; and, around 7:30 in the evening, the jurors announced by written communication that they could not arrive at a unanimous decision. The jury also sent a written communication to the court as follows: "The jury has discussed the testimony and is in conflict on what was testified by Barbara and Bob [defendant's companions] concerning what was said by the inn manager to the defendant just prior to pulling the knife." The court quite properly instructed the jury that it would simply have to "recall the evidence." At 9:05, the jury was returned to the courtroom, and the court gave instruction No. 11, to which no objection was raised, which is the so-called "hammer" instruction. Shortly thereafter, the jury returned a verdict of guilty.

■ In these circumstances, it cannot be said that the guilt of the defendant is shown by such overwhelming and uncontradicted evidence that the error in the argument demonstrated above did not result in a manifest injustice to substantial rights of the defendant. In a close case such as this, the argument of the prosecuting attorney which might have been taken as a reference to the failure of the defendant to testify, coupled with his erroneous argument to the jury concerning their personal safety if the defendant was acquitted, may in the light of the jury's uncertainty as to the defense evidence and their obvious difficulty in reaching a verdict in a relatively simple case have been the balance between either a hung jury or an acquittal instead of a guilty verdict. What was said by this court in *State v. Heinrich, supra,* at 116, is equally appropriate here:

"The specific and cumulative effect of this argument and the lack of proper objection to or action by the trial court resulted in an inflammatory and prejudicial atmosphere and foreclosed the possibility of a fair and impartial trial."

The verdict and judgment must be reversed and remanded for a new trial.

All concur.