**STATE of Missouri, Plaintiff-Respondent,**

v.

**Bobby LANE, Defendant-Appellant.**

**No. KCD 27609.**

Missouri Court of Appeals,
Kansas City District.

May 2, 1977.

Motion for Rehearing and/or Transfer
Denied June 1, 1977.

Application to Transfer Denied
July 11, 1977.

Paul R. Hales, St. Louis, William Kunstler, New York City, for defendant-appellant.

John C. Danforth, Atty. Gen., Robert L. Presson, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before SWOFFORD, P. J., and SHANGLER and DIXON, JJ.

DIXON, Judge.

Defendant appeals his conviction of first degree murder in connection with a robbery and a mandatory sentence of life imprisonment. This appeal is from the third trial of defendant for the murder of Officer Ronald Yoakum of the Kansas City, Missouri, Police Department, on November 26, 1968. The first trial resulted in a conviction set aside by the trial court on defendant's motion. A conviction of conventional first degree murder in defendant's second trial was affirmed by the Supreme Court in *State v. Lane,* 475 S.W.2d 91 (Mo.1971), but the defendant's 27.26 motion was sustained by the trial court. In this appeal, as in his appeal to the Supreme Court on the second trial, defendant argues the sufficiency of the evidence to sustain the conviction.

▮ Where a question of sufficiency is raised, this court must consider as true the evidence favorable to the State and the favorable inferences reasonably to be drawn therefrom, *State v. Thomas,* 309 S.W.2d 607 (Mo.1958); *State v. Taylor,* 324 S.W.2d 643 (Mo.1959); and evidence and inferences to the contrary are rejected. *State v. Colton,* 529 S.W.2d 919 (Mo.App. 1975).

So viewed, the evidence showed that defendant and a man later identified as Carl Primous went to an apartment building where defendant had previously occupied an apartment. Defendant had not been to his apartment for four to five weeks, and the landlord had since commenced an eviction proceeding against defendant and changed the lock. The resident manager, Mrs. Lewis, did not have a key to the apartment, but informed defendant that he should get his things out of there. Mrs. Lewis reentered her apartment, and the defendant and Primous started up to the second floor. They then borrowed a table knife and a butcher knife from a second floor tenant and proceeded to defendant's third floor apartment. Some girls living across the hall who had observed defendant and Primous attempting to "jimmy" the door informed Mrs. Lewis that someone was trying to break in to that apartment, and Mrs. Lewis called the police.

Officers Mynatt, Smith, and Yoakum of the Kansas City, Missouri, Police Department were dispatched in response to Mrs. Lewis' call. Officer Mynatt arrived first and was directed to the third floor by Mrs. Lewis. He started up the stairs with his service revolver drawn; and, as he approached the third floor, he saw defendant with a table knife in hand. He ordered defendant to drop the knife, and he did so. When Officer Mynatt reached the top of the stairs, he saw Carl Primous with a butcher knife. When Officer Mynatt told Primous to drop the knife, both Primous and the defendant lunged at him grabbing his service revolver. He was struck in the neck and chest by both men. Primous was able to disarm Officer Mynatt after kicking him in the head. Primous was holding the gun to Officer Mynatt's head when the defendant told him to leave the officer alone and then said, "Let's get out of here." The defendant and Primous then both ran down the stairway, Primous still carrying the service revolver when last seen by Officer Mynatt.

Officers Smith and Yoakum were just arriving when the defendant and Primous started for the first floor. Officer Smith was standing in the doorway behind Officer Yoakum when he observed the defendant running down the stairs followed by Primous carrying an automatic. Defendant jumped on Officer Yoakum, and they both fell to the floor struggling. Primous also fell and, from a sitting position approximately three feet from defendant and Officer Yoakum, aimed the automatic at them. Officer Smith heard a shot and shot at

Primous who then aimed at Officer Smith. Officer Smith then heard another shot and shot again at Primous who fell back. Primous then ran down the hallway, turned and aimed *again* at Officer Smith who ran up seven or eight steps and then shot Primous twice. The defendant then got up from struggling with Officer Yoakum and grabbed the cylinder of Officer Smith's gun, after which more police officers arrived and subdued him.

A .380 automatic was found in Primous' hand, and two service revolvers, one belonging to Officer Mynatt and one belonging to Officer Yoakum, were found in the hallway. Officer Mynatt's service revolver had been fired six times and Officer Yoakum's one time. Lint in the barrel of the automatic as well as an imprint on one of the cartridges indicated that it had not been fired at all.

Officer Yoakum died as a result of three gunshot wounds, in the lip, near an armpit and near the breastbone. Bullet fragments recovered from Officer Yoakum's body were fired from Officer Mynatt's service revolver. Powder burns on Officer Yoakum's clothing indicated that he had been shot from less than four feet, and there was evidence that the breast wound was a contact wound from a gun fired at less than a foot.

▪▪▪ Defendant in the brief premises his argument as to submissibility on a failure of the State to prove that he shot Officer Yoakum. Under the felony murder rule, the felonious intent necessary to a murder conviction may be shown by the perpetration of a felony. *State v. Chambers,* 524 S.W.2d 826 (Mo. banc 1975), *cert. denied,* 423 U.S. 1058, 96 S.Ct. 794, 46 L.Ed.2d 649 (1976). If the evidence was sufficient to make a submissible case that defendant and Primous robbed Officer Mynatt and that "the killing occurred 'in flight from the scene of the crime to prevent detection or promote escape' ", then it was adequate to support his conviction under the felony murder submission. *State v. Johnson,* 524 S.W.2d 97, 100 (Mo. banc 1975). The evidence viewed most favorable for the State was clearly sufficient to sup-

port a first degree felony murder conviction. Adopting the language of the Supreme Court in *State v. Lane, supra,* we find that, "The trier of facts reasonably could find that the killing of Officer Yoakum during a fight with defendant was a part of one continuous episode and the result of a joint effort and common purpose of defendant and Primous to escape, by use of whatever means necessary, after their joint assault upon and robbery of Officer Mynatt, . . . ." *State v. Lane, supra,* at 95.

Prior to a consideration of the principal point briefed and argued by the defendant, a congerie of issues need some consideration; and, although they were not argued, most of them were submitted by counsel on the basis of the briefing with the tacit admission that some of these issues were not properly raised. These will be referred to under the numbered point in which they appear in defendant's brief.

The first of these is defendant's Point III, that a manslaughter instruction should have been given. This was not properly raised in the motion for new trial, the only mention of this instruction in the motion being a contradictory one and not specific enough to properly raise the issue. *State v. Cheek,* 413 S.W.2d 231 (Mo.1967); *State v. Schulten,* 529 S.W.2d 432 (Mo.App.1975).

▪▪▪ In any event, there is no error, the defendant's reliance upon *State v. Stapleton,* 518 S.W.2d 292 (Mo. banc 1975), to support an automatic submission of manslaughter being misplaced, since only cases tried after the March 1, 1975 amendments to the Notes on Use to MAI–Cr 6.02 require automatic submission of manslaughter. *State v. Mudgett,* 531 S.W.2d 275, 280 (Mo. banc 1975). It is clear that there is no evidentiary basis for the submission of manslaughter in this case. The defendant's theory that the manslaughter instruction was required is based upon a sudden encounter with uniformed police officers. In such circumstances, under the law prior to *Stapleton,* evidentiary support is required before the necessity of giving of a manslaughter instruction arises. These facts do not give

rise to any submissible issue of manslaughter. *State v. Spaugh,* 200 Mo. 571, 98 S.W. 55 (1906); *State v. Duncan,* 116 Mo. 288, 22 S.W. 699 (1893), *appeal dismissed* 152 U.S. 377, 14 S.Ct. 570, 38 L.Ed. 485 (1894).

■ Defendant raises as his fourth point that the trial court erred in proceeding on an amended information in lieu of indictment because the State had not been granted leave to file an amended information, and defendant was not granted a preliminary hearing. Defendant admits that he would not be entitled to a preliminary hearing if the trial court did grant the State leave to amend. No error is shown. "Appellant complains that no leave was sought or granted for filing the second information, but where the record reflects the filing of such information, as it does here, it is 'presumed the trial court "permitted" the filing in accordance with Rule 24.02.' " *State v. Colbart,* 411 S.W.2d 92, 95 (Mo. 1967); *State v. McCrady,* 416 S.W.2d 175 (Mo.1967).

During oral argument, counsel for defendant stated that while he does not waive his fifth point [The court erred in overruling appellant's application for a change of venue] and his sixth point [The court erred in failing to conduct an evidentiary hearing on defendant's assertion that the jury panel was not representative of the community in that black persons were excluded in violation of his right to equal protection], but admitted that the points lack adequate buttressing in the record to be considered by this court.

■ The record has been examined and on the issue as to the racial composition, the defendant never requested an evidentiary hearing. Absent that request and a record basis for review of the contention, the issue is not before this court. *State v. Jones,* 531 S.W.2d 67 (Mo.App.1975).

■ On the issue of the trial court's refusal of the change of venue, the record made by defendant simply does not demonstrate the prejudice required under Rule 30.04. The testimony offered was simply not evidence of prejudice against the defendant as the trial court indicated in his comments overruling the request for a change of venue. The cases cited by defendant are irrelevant to the issue raised. This is not a case where the issue is one of an abuse of discretion by the trial court on the basis of evidence presented.

■ Defendant's seventh point is that the trial court erred in failing to give a converse instruction with respect to the evidence offered by defendant that he was unconscious when Officer Yoakum was shot. Defendant admits that no converse was offered. A similar argument was made by the defendant in *State v. Banks,* 491 S.W.2d 247 (Mo.1973). In *Banks,* the defendant was convicted of first degree murder for shooting his sister-in-law. He testified that he did not shoot his sister-in-law but that the gun went off while he was wrestling with her. The court held that the defendant's testimony did not establish a defense which must be instructed on as a part of the law of the case, but rather was merely a denial of the offense charged. The court went on to hold that since a converse instruction is not part of the law of the case, it is not error for the trial court to fail to give such an instruction when there is no request therefor. Accord, *State v. Smith,* 515 S.W.2d 761 (Mo.App.1974). *Banks* is controlling in this fact situation.

Defendant's eighth point asserts denial of a speedy trial in violation of the Sixth Amendment to the Constitution of the United States. The only case cited is *Dickey v. Florida,* 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970). That case turns on a finding that the delay of seven years from the offense to trial was for the convenience of the State.

■ In contrast, the delays in this case were not exclusively for the convenience of the State. The initial indictment was filed on December 6, 1968. At the end of the first trial, defendant's motion for new trial was granted on April 15, 1970, because of fatal variance between the indictment and proof. An information in lieu of indictment was filed June 30, 1970, and defendant was

convicted in a court-tried case on July 9, 1970. That conviction was later affirmed on appeal, *State v. Lane,* 475 S.W.2d 91 (Mo.1970), but vacated by the circuit court on September 20, 1973, on the basis of a 27.26 attack upon the information in lieu of indictment as defectively failing to charge that defendant's conduct was "felonious." The amended information in lieu of indictment was filed on November 27, 1973, after which the trial now appealed from followed on May 20, 1974. Under the authority of *State v. Thompson,* 414 S.W.2d 261 (Mo. 1967) and *State v. Hadley,* 249 S.W.2d 857 (Mo.1952), defendant is not entitled to be discharged on the basis of denial of his right to a speedy trial. Here, as in those cases, there was error in connection with defendant's earlier convictions, and the error was corrected, in this case by the circuit court when the questions were presented. "That merely entitles defendant to a new trial. The delay involved does not entitle defendant herein to be discharged without a retrial . . .. This delay is attributable to defendant . . . The fact that the prosecuting attorney made a mistake in amending the information . . . should not entitle defendant to discharge for failure to receive a speedy trial, any more than he should be so entitled if the state commits some error in an earlier trial such as offering evidence not properly admissible or tendering an incorrect instruction." *Thompson,* at 266–267. See also *Bayless v. United States,* 147 F.2d 169 (8th Cir. 1945), *modified* 150 F.2d 236 (8th Cir. 1945).

▮▮▮▮ The State correctly points out in its brief that this issue was not raised until the motion for new trial and therefore not preserved for appellate review. *State v. Flynn,* 519 S.W.2d 10 (Mo.1975); *State ex rel. State Highway Comm'n v. Harper,* 542 S.W.2d 555 (Mo.App.1976). However, from the foregoing, it is apparent that there was no infringement of defendant's right to a speedy trial, much less manifest injustice under the plain error standard of review. Furthermore, the record on appeal does not reveal that any demand for trial was ever made and refused. "[A] defendant's failure

to take affirmative action seeking a speedy trial constitutes a waiver of that right." *State v. Harper,* 473 S.W.2d 419, 424 (Mo. banc 1971); *State v. Horn,* 498 S.W.2d 771 (Mo.1973).

▮▮▮▮ The defendant's ninth point is that the trial court erred in not granting a continuance to enable him to obtain the materials he had prepared and needed to act as co-counsel at his trial. Prior to jury selection, a colloquy occurred between the defendant and the court during which the defendant requested that he be allowed to obtain certain materials, "All my copies of every writ that I have filed, my legal dictionary, all my research in relationship to the writs that I filed, and all of the letters, stipulations, and so forth that I obtained from my attorney, you know, everything that is required, even information in relationship to witnesses . . ." Defendant said that these materials were in the possession of a certain person in Blue Springs and that the police department there had intentionally diverted his efforts to obtain them. While defendant did not, in terms, ask for a continuance, it is clear from his discussion with the trial court that one was being requested. "[A]n application for a continuance in a criminal case is addressed to the sound discretion of the trial court; and . . . an appellate court will not interfere, unless it clearly appears that such discretion has been abused." *State v. Le Beau,* 306 S.W.2d 482, 486 (Mo.1957). A defendant must demonstrate that the denial of a continuance prejudiced his case. *State v. Tash,* 528 S.W.2d 775 (Mo.App.1975). Defendant admits that the burden of demonstrating prejudice is on him. He argues that the trial court's denial prejudiced his case because he was acting as co-counsel and his papers and notes were needed to adequately assist in his defense. However, the defendant goes on to admit that his co-counsel performed adequately, arguing only that he would have been better able to assist counsel if he had had his notes and materials. " '[I]t requires a very strong showing to induce the higher court to interfere, and it will disturb the action of the

trial court only where a clear abuse of discretion is shown.'" *State v. Thomas,* 433 S.W.2d 537, 539 (Mo.1968); *State v. Cukovich,* 485 S.W.2d 16, 21–22 (Mo. banc 1972); *State v. Lynch,* 528 S.W.2d 454, 457 (Mo. App.1975). The materials were never described, their use was never made explicit, and, so far as the record shows, they were not unavailable. Trial counsel made no record to support the need for such materials or of his inability to defend based on the fact they were not available.

■ In his tenth point, defendant argues that the trial court committed prejudicial error in permitting the trial to proceed after it became known to the venireman on voir dire that he had been associated with a disturbance in the county jail during the week prior to trial. The basis for the knowledge of defendant's involvement occurred because a venireman indicated he had read a newspaper account of the disturbance.

The difficulty with defendant's position is that nowhere in the record does there appear to have been a motion for a mistrial or a motion to discharge the panel. Counsel for defendant asked the venireman whether he had read about this case, and then asked the court if it wanted challenges then or later, to which the court replied later. No objection of any kind was made. The record reveals that the juror was not among those chosen to serve.

Defendant's argument is that he was prejudiced because other veniremen were informed by this colloquy that defendant had been a participant in a jail disturbance. Even assuming such an inference could be made from what was said, defendant did not seek the relief, the denial of which is now complained of. However, such relief would have properly been denied even if it had been requested. In *State v. Goffstein,* 342 Mo. 499, 116 S.W.2d 65 (1938), the Supreme Court held that the defendant's oral motion to discharge the panel was properly denied. On the day of the voir dire examination, newspaper articles appeared which recited that the defendant was beginning his second trial for an offense after the first trial resulted in a mistrial. Several veniremen returned from lunch with the papers and were questioned. Some had noticed the headline only, and only three had read the articles. Those three were excused. The court held, "No one of the twenty-four was shown to have formed or expressed an opinion as to defendant's guilt or innocence or to have been in any way biased. The court properly refused to discharge the entire panel on the showing made. *Goffstein,* at 70.

■ Defendant's reliance on *State v. Raspberry,* 452 S.W.2d 169 (Mo.1970), is misplaced. Defendant refers to that part of *Raspberry* holding that "The receipt by a juror of possibly prejudicial information during the trial of a felony case requires that the verdict be set aside unless the state affirmatively shows that the jury was not subject to improper influences." *Raspberry,* at 174. Here we are dealing with an unobjected to incident during voir dire. "In this context the trial court not being requested to act until too late cannot be error. A trial court is under no duty to strike any venireman on its own motion." *State v. Gamache,* 519 S.W.2d 34, 41 (Mo.App.1975).

■ The defendant's eleventh point is that the court erred in failing to admonish the prosecutor, advise the jury to disregard his remarks or declare a mistrial when the prosecutor made an allegedly inflammatory remark not supported by the evidence during closing argument. The remark referred to was as follows:

PROSECUTOR: "If Primous was coming down the steps with both guns firing and after everybody . . ."

COUNSEL FOR DEFENDANT: "If the court please there is no evidence in this case that Primous came down the steps with two guns firing. I think it is highly inflammatory and prejudicial."

THE COURT: "The jury will remember what the evidence is; that is their function. Proceed."

Again, defendant seeks relief on appeal not requested at trial. There is no error where the defendant expressed apparent

satisfaction with the action taken by the trial court. *State v. Woolford,* 545 S.W.2d 367, 372 (Mo.App.1976); *State v. Platt,* 525 S.W.2d 637 (Mo.App.1975); *State v. Bibee,* 496 S.W.2d 305 (Mo.App.1973). In *State v. Jackson,* 511 S.W.2d 771, 775 (Mo.1974), the court also dealt with prosecutorial misstatement of the evidence. The court held, "When defense counsel correctly objected that there was no evidence of that, the court stated: 'The jury will be guided solely by the evidence it has heard from the stand.' The trial court's response was adequate in view of the objection and the absence of request for any further relief precludes the conclusion that such ruling affords the basis for a new trial." Defendant's point is without merit.

The final issue to be determined and one strongly urged by the defendant both in his brief and oral argument is that the court erred in not instructing on common law second degree felony murder.

Defendant explicates this point by asserting that the evidence would have supported such a submission and that even absent a request the court was under a duty to so instruct on a lesser included offense supported by the evidence under Section 546.-070(4), RSMo 1969, and Rule 26.02(6). Defendant further contends that *State v. Jasper,* 486 S.W.2d 268 (Mo. banc 1972), controls and requires on the facts of this case a submission upon the theory of second degree common law felony murder.

Significantly, defendant does not assert that the submission by the trial court of conventional second degree murder was not supported by the evidence. Such a submission is patently proper on the record here presented.

The defendant's contention thus is that the trial court was required to give *two* second degree instructions. Case law squarely raising this issue is rare since a defendant ordinarily does not want the jury to have instructions giving the jury a double opportunity to convict. The failure to so instruct on such lesser included offenses might very well be sustained on the ground that, if it be error, it is error favorable to the defendant of which he cannot complain. See *State v. Brim,* 339 S.W.2d 775 (Mo. 1960), and *State v. Smith,* 365 S.W.2d 505, 508 (Mo.1963).

More persuasive grounds appear to deny effect to the contention made. There was evidence in this record that would have supported the conviction of defendant under a second degree instruction, a matter which defendant does not contest. A second degree murder instruction was required—and given—because it is the duty of the court to give instructions which cover " 'all the essential elements of an offense embraced within the charge,' " or, as put another way, the instructions must declare the law " 'applicable to every crime, or grade of crime, of which, under the evidence, the jury might convict the accused.' " *State v. Foster,* 355 Mo. 577, 197 S.W.2d 313, 317–318 (1946). The trial court performed its duty by giving the second degree conventional instruction. An additional second degree instruction based on the theory of nonstatutory felony-murder in connection with resisting arrest was not necessary. The felony-murder rule does not make the underlying felony an element of the felony-murder (whether in the first or second degree), but rather provides a means of proving the requisite felonious intent. *State v. Mudgett,* 531 S.W.2d 275 (Mo. banc 1975). The essential elements of second degree murder, willfulness and premeditation, were submitted by the instruction given. See *State v. Harley,* 543 S.W.2d 288, 292–293 (Mo.App.1976), where there was evidence of both first degree conventional and first degree felony murder. The court held that, although the information charged first degree murder in the conventional form, the trial court did not err in instructing on first degree felony murder but not on first degree murder in conventional form. Implicit in this holding is the rule that the state and the court were not required to submit alternative theories.

In the instant case, the trial court has performed its duty to instruct upon the law of the case by offering an instruction proper under the evidence which would

have permitted the jury to find the defendant guilty of second degree murder. The jury did, of course, find the defendant guilty of first degree murder under a felony murder instruction, a finding well supported in the evidence. The defendant characterizes the failure to give the common law felony murder instruction as "egregious" because the jury "had not opportunity to consider the lesser degree of felony murder." What defendant's argument thus demonstrates is that the prejudice claimed is not that the jury was not permitted to find him guilty of second degree murder but that defendant was not afforded a defensive posture that would have defeated the first degree felony conviction so amply justified on this record. When, as here, the only reason advanced for the giving of an instruction for a finding of guilt on a different theory is the tactical advantage to the defendant, then defendant must request the instruction. This rule will also serve to prevent the attack that would inevitably follow if the state offered and the trial court gave instructions on two theories of second degree murder. In such circumstances, a defendant might well argue that prejudice ensued from such alternative submissions.

Nor does *Jasper* compel a different result as defendant argues. The holding in *Jasper* is that there was no evidence of conventional form second degree murder and that, therefore, the jury was misdirected with respect to the offense. The court reversed on that ground and remanded the cause because the evidence clearly showed that a conviction of second degree murder could be sustained upon the evidence in that case if the instruction on common law felony murder was before the jury. The case does not hold that the giving of a second degree common law felony murder instruction is required in a situation where the record will support and the court has given a proper second degree instruction.

Judgment affirmed.

All concur.