**STATE of Missouri, Respondent,**

v.

**Daniel HARRIS, Appellant.**

**No. WD 36603.**

Missouri Court of Appeals,
Western District.

May 13, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 26, 1986.

Application to Transfer Denied Sept. 16, 1986.

Sean D. O'Brien, Public Defender, Kansas City, David J. Fry, Asst. Public Defender, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Theodore A. Bruce, Asst. Atty. Gen., for respondent.

Before SHANGLER, J., Presiding, and DIXON and LOWENSTEIN, JJ.

PER CURIAM:

Defendant Daniel Harris appeals from his jury convictions of robbery in the first degree, § 569.020, RSMo 1978, and armed criminal action, § 571.015, RSMo 1978, and sentence to 25 years imprisonment on each conviction. The sentences are to be served consecutively.

Defendant raises three allegations of error on appeal. First, he argues, that the prosecutor was allowed to personalize the crime to the jury during closing argument. Second, he claims a mistrial should have been granted because the prosecutor alluded to facts not in evidence during the closing argument. Third, he contends that the court should have suppressed the victim's pre-trial and in-court identifications of defendant because of the way the identifications were conducted.

The victims in this case, Roy Maurer and Victoria Ellensohn, were robbed at gunpoint in Maurer's car around midnight on July 19, 1983. Maurer was stopped at a stop sign at the intersection of Grand and 79th Streets when a vehicle pulled in front of the Maurer car and blocked its path. Two men got out. One man went to the driver's side of Maurer's car, pointed a gun at Maurer and demanded his wallet. He also took Maurer's watch and car keys. The other man went to the passenger side of the car and took Ellensohn's purse and jewelry. The robbery took between five and eight minutes. The area was lighted by street lamps.

A few days later Maurer was shown a photographic display at the police station, and he identified defendant as the robber.

A day or two after that Maurer again identified defendant as the robber from a police line-up. These identifications were made within about a week and a half of the robbery. At the trial Maurer testified that defendant was the man who robbed him. Ellensohn kept her eyes down throughout the robbery and therefore was unable to participate in the identification process.

At trial, the state produced evidence that the day after the robbery a man driving defendant's car and a passenger in the car attempted to buy gas with Ellensohn's credit card. The passenger came into the station and expressed an interest in buying tires and a battery. The attendant had discovered the card was no good, and he told the passenger that the gas would have to be paid for in cash. The passenger went back to the car on the pretext of getting money for the gas, and the two men drove away. The attendant had obtained the license number of the car and he called the police.

The officer who interrogated defendant testified that upon defendant's arrest, defendant denied any involvement in the robbery. When questioned about the credit card incident, defendant first claimed that whoever had told the police that story was a liar; then he said he had picked up an individual whose name he did not know and that person had offered to put gas in defendant's car. Defendant told police that his girlfriend would be his alibi on "whatever" night the robbery occurred.

In a second interview with the police detective, defendant told the officer that he was the driver of the car used in the robbery but that he never got out of the car. He claimed a man called "Nunu" and a friend of "Nunu's" actually did the robbery. Later defendant told the officer that "Nunu's" real name was Todd Carr. He claimed to have learned "Nunu's" first name from a cellmate and his last name from defendant's cousin.

At trial defendant testified that on the night of the robbery, he drove his girlfriend to work at about 11:30 p.m. He denied telling the police that he was involved in the robbery. In rebuttal, the state produced work records which showed that defendant's girlfriend was not scheduled for work and did not work on the night of the robbery.

■ In his first point of error, defendant claims the trial court erred in overruling defendant's objection to a remark made by the prosecutor in closing argument which defendant claims improperly personalized the crime to the jury. The pertinent part of the closing argument follows:

[State]: And this isn't TV. This isn't John O'Connor up here versus Charles Brown, and it isn't even Roy Maurer versus Daniel Harris, because it's the State of Missouri that brings this case. And why is that? Because every time a member of this community is victimized, we all suffer. So just because on this occasion it was Roy Maurer, it could have been someone else, someone dear and close to us.

[Defendant]: Your Honor—

[State]: That is why the law—

[Defendant]: Excuse me. I'm going to object to counsel personalizing. I think it's totally improper.

THE COURT: OVERRULED.

The offending remark is the prosecutor's statement that the victim could have been "someone dear and close to us." Defendant claims that by overruling defense counsel's objection to the remark, the trial court placed its imprimatur on the comment and "reinforced the inflamed passion of the jury that the victim of this crime could have easily been a member of their family or close friend." Therefore, contends defendant, he was denied a fair and impartial trial.

"It is well settled that the prosecutor may not personalize his argument to the jury." *State v. Raspberry*, 452 S.W.2d 169, 172 (Mo.1970). The jury must determine the guilt or innocence of the defendant from the evidence presented and that determination cannot be made objectively if the jury members have been put in fear of their safety or the safety of their families

by the tone of the prosecutor's closing argument. *Id; See State v. Groves,* 295 S.W.2d 169, 174 (Mo.1956).

The language used in this case is not nearly so blatant as that used to improperly personalize the jury in cases such as *State v. Tiedt,* 357 Mo. 115, 120–123, 206 S.W.2d 524, 527–528 (banc 1947); *State v. Groves,* 295 S.W.2d at 173; *State v. Raspberry,* 452 S.W.2d at 172; or *State v. Ellinger,* 549 S.W.2d 136, 139 (Mo.App.1977), and in fact is much more analogous to the language used in *State v. Fletcher,* 244 S.W.2d 98, 104 (Mo.1951), which was found not to be error.

Nevertheless the prosecutor's subtle remark in this case could very well have caused the jury to consider how they would feel if "someone dear and close" had been the victim of this robbery. The argument is not to be condoned and the court should have sustained defendant's objection to the comment. Even considering the impropriety of the prosecutor's remark and the trial court's failure to remedy the situation, it does not necessarily follow that a new trial is warranted. No mistrial was requested by defendant. The question defendant presents on review is whether the remark created a situation of such manifest injustice for defendant that a new trial must be had.

■ In view of the evidence in this case it cannot be said that defendant was unduly prejudiced by the remark in the closing argument. Here, there was eyewitness identification of defendant as the robber. Defendant was involved in an attempt to use Ellensohn's credit card the day following the robbery. When the credit card was refused by the attendant, the parties in defendant's car left the station without paying. Although defendant denied it, the testifying police officer stated that defendant at one point confessed his involvement in the crime. The evidence showed that defendant had stated his girlfriend would be his alibi on "whatever night" the robbery occurred. The State conclusively rebutted defendant's alibi that he was taking his girlfriend to work about the time of the

robbery by showing that the girlfriend did not work the night the robbery occurred. Defendant established poor credibility with the jury. The victim positively identified defendant as the robber. The defendant was involved under very suspicious circumstances with one of the victim's credit cards. The prosecutor's personalization of the jury was brief and subtle. The prosecutor, after the objected-to comment, went on to an entirely appropriate argument relating to the importance of law enforcement. It cannot be said that prejudice resulted. The point is denied. Rule 29.12.

■ In his second point defendant claims the trial court abused its discretion in failing to grant a mistrial during the state's closing argument because, according to defendant, the prosecutor argued facts not in evidence.

The portion of the argument in question is as follows:

[State]: But be that as it may, then [the detective] talks to him, and what does he tell [the detective]? He tells [him] that he wasn't involved, and then all of a sudden, "I was with Nunu." Then Karen McGee goes up and talks to him. His girlfriend, the girl he took to work that night, the girl who didn't go to work, told us about it, the girl, who if she was up there at the police department when she talked to him, and he told her he committed the crime, don't you think she would have—

[Defendant]: Your Honor, I would object to that. There's been no evidence that he told her that he committed this offense, and I think that is totally improper for counsel to state that. It's clearly misstating the evidence.

THE COURT: Objection sustained.

[Defendant]: Your Honor, also request—

THE COURT: The jury will disregard his last comment.

The detective who had interrogated defendant had testified that Karen McGee had visited defendant at the police station. There was no evidence, however, that de-

fendant told McGee that he had committed the crime. Defendant's objection to the prosecutor's comment was sustained and the jury was told to disregard the remark. Defendant contends, however, that the prosecutor's action was intentional and the "deliberate false introduction of this confession was so prejudicial that a mistrial was the only remedy which could remove the taint of this error."

Declaration of a mistrial is a drastic remedy and should be exercised only in extraordinary circumstances where the prejudicial effect can be removed in no other way. *State v. Raspberry,* 452 S.W.2d at 173. The trial judge who observed the incident can best gauge its prejudicial effect on the jury and whether a mistrial is warranted is a matter largely within his discretion. *Id.* In this case the prosecutor was arguing hypothetically. The sentence that defendant complains of is prefaced with an "if," and the prosecutor was never allowed to finish his statement. Presumably, the prosecutor was implying that since Karen McGee did not testify at trial, her testimony would likely have been unfavorable to the defendant. The detective testified that defendant had confessed involvement in the robbery to him after talking with Karen McGee. Evidence of a confession was already before the jury. The trial judge sustained defendant's objection to the prosecutor's comment and instructed the jury to disregard it. The jury heard the evidence was and the prosecutor in his next remark pointed out that it was up to the jury to remember the evidence. It cannot be said that the comment so prejudiced defendant that the trial court abused its discretion in denying defendant a mistrial.

■ Finally, defendant contends that the trial court should have suppressed Maurer's pretrial and in-court identifications of defendant because of the physical dissimilarity of the participants in the line-up as well as those persons depicted in the photograph array. According to defendant, he was the only person in the two groups which matched Maurer's "overbroad generic description" of the assailant. He then argues that Maurer's in-court identification of defendant was based on the pre-trial identification procedures and not on an independent recollection of the physical characteristics of the robber.

It is strange that defendant would argue that he is the only man who would fit a "generic" description. An examination of the photo array and the photograph of the police line-up which are a part of the record reveals that the participants were not so dissimilar as to make defendant outstanding. At any rate, a line-up does not require exact physical conformity of the participants. *State v. Kirk,* 636 S.W.2d 952, 954 (Mo.1982); *See State v. Bockes,* 676 S.W.2d 272, 277 (Mo.App.1984).

In the case of this line-up all the men are within an inch of one another's height. Their physiques vary but there is no vast difference. All appear to have facial hair. Likewise, the men depicted in the photo array are similar. All have facial hair in varying amounts. Their hairstyles are comparable except for one man whose hair is cut short. The men are light to medium complexioned. Neither the photographs nor the men in the line-up were presented to Maurer in any "suggestive" way.

■ Nor is there any merit in defendant's argument that Maurer's in-court identification could only be based on Maurer's recollection of defendant from pre-trial identification procedures. Maurer testified that the robbery lasted five to eight minutes, that the area was lighted and that he looked at the robber's face throughout the ordeal. Maurer especially remembered defendant's eyes. Certainly there was an independent basis for the identification. *State v. Proctor,* 535 S.W.2d 141, 143 (Mo. App.1976). Under the "totality of the circumstances" Maurer's in-court identification appears reliable. *See State v. Holt,* 603 S.W.2d 698, 702 (Mo.App.1980). Any variances between Maurer's "generic" description of defendant and defendant's description of himself can easily be accounted for by recognizing that descriptions are relative, not concrete. What is slight to one person may be medium to another.

Maurer never waivered in his certainty that defendant was the man who robbed him. Defendant's third point is denied.

The judgment is affirmed.