STATE of Missouri, Plaintiff-Respondent,

v.

James Roy HILL, III,
Defendant-Appellant.

No. 35789.

Missouri Court of Appeals,
St. Louis District,
Division One.

May 4, 1976.

Motion for Rehearing or Transfer
Denied June 15, 1976.

Application to Transfer Denied
July 12, 1976.

 

Hayes & Heisler, Kenneth E. Reiter, Clayton, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., W. Mitchell Elliott, Asst. Atty. Gen., Jefferson City, Courtney Goodman, Jr., Pros. Atty., Thomas E. Dittmeier, Asst. Pros. Atty., Charles L. Merz, Asst. Pros. Atty., Clayton, for plaintiff-respondent.

WEIER, Presiding Judge.

James Roy Hill, III was found guilty by a jury of two counts of murder in the first degree, two counts of robbery in the first degree by means of a dangerous and deadly weapon, and two counts of assault with intent to kill. As to the first two charges, he was sentenced to two life terms; as to the next three, to three terms of one-hundred years each, all five to run consecutively; and as to the sixth charge, to one term of one-hundred years to run concurrently with the term for Count V.

Defendant does not challenge the sufficiency of the evidence. The facts are briefly as follows. Defendant participated in the robbery of a tavern in Maplewood known as Cousin Hugo's with four other young males during which a barmaid and one patron were wounded and two patrons were killed, one by a stab wound and the other, an off-duty police officer, by a shotgun blast to the head. The robbery and killings occurred at approximately 1:15 a. m., March 18, 1972. By 9:30 a. m. four suspects had been arrested at 1338 Banneker, Maplewood, Missouri, the home of one of the suspects, and taken into custody. Defendant was arrested on March 20, 1972 at an apartment on Natural Bridge Road. Three eyewitnesses testified that defendant was one of the five who robbed the tavern. Two of the witnesses observed defendant fire the shot that killed John Gallino, the police officer. The same two witnesses also identified defendant at a lineup. Nathaniel Heard testified that on March 18, 1972 defendant told him that he "blew a pig's head off" and that the victim was on the floor when he shot him.

The police searched the Banneker Street house on two occasions. They discovered numerous items that were linked to the robbery. Among them were items taken during the robbery—shotguns, shotgun shells, other weapons and parts of weapons, and items of clothing. Six identifiable prints were obtained from the items taken during the robbery. Two of them were identified as defendant's.

## I.

For his first point on appeal defendant alleges simply that it was error to overrule his motion to suppress physical evidence but does not include a statement of wherein and why the ruling is claimed to be erroneous. He therefore fails to comply with Rule 84.04(d) which is applicable to criminal as well as civil cases. Rule 28.18; *Boyer v. State*, 527 S.W.2d 432, 437[6] (Mo. App.1975). This court is, as a result, under no duty to consider this contention. However, gratuitously we conclude that defendant does not, in any event, have standing to challenge the search and seizure under the facts of this case.

A defendant cannot challenge the admission of evidence on the ground that it was seized in an allegedly illegal search unless he has standing to raise the issue. One's personal right to privacy guaranteed by the Fourth Amendment must be violated before he can object to the introduction of the fruits of a search. *State v. Hornbeck*, 492 S.W.2d 802, 808[10] (Mo.1973); *In re J. R. M.*, 487 S.W.2d 502, 508[2] (Mo. banc 1972); *State v. Achter*, 512 S.W.2d 894, 899[3, 4] (Mo.App.1974). Only when he establishes that he himself was a victim of the improper activity which forms the basis of his challenge to the evidence may he obtain its suppression. He must therefore present evidence of some circumstance or set of circumstances demonstrating that the area searched was one in which he had a reasonable expectation of freedom from governmental intrusion before he can be said to have standing. *State v. Hornbeck, supra* ; see *In re J. R. M., supra*, pp. 504–509. The issue of standing must be deter-

mined on a case by case basis. *In re J. R. M., supra* at 508[2]. The question of whether movant has a sufficient interest in the property searched to object can be answered only after an examination of the facts. *State v. Pruett*, 425 S.W.2d 116, 120[5, 6] (Mo.1968).

The facts adduced at the hearing on the motion to suppress and at trial have been examined to determine whether defendant had an interest in the premises sufficient to have given rise to a reasonable expectation of privacy. Subsequent to the arrest of four of the subjects, not including defendant, at 1338 Banneker, police officers seized, among other items, somewhere between one and three hundred pieces of paper, most of them handbills for an organization known as the Black Patriot Party. Defendant's name or initials appeared on three to five of these pieces of paper. Only one item, a City of St. Louis Workhouse release paper, actually belonged to defendant. Defendant, when testifying at trial, also stated that he had an item of clothing with the initials JR on it at the Banneker house. There was, however, no testimony that such an item was found. Defendant's claim to standing must rest solely on the fact that he left behind at the Banneker house a workhouse release paper with his name on it. Defendant cites, and we can find, no case that compels us to accord him standing on so slim a connection with the premises searched. There is no evidence that defendant had permission to use or had used the premises for his own purposes. He had no key. He did not use it or any part of it as an office or for conducting business of any kind. He was neither owner nor tenant. The evidence is inadequate to demonstrate an interest on the part of defendant in the premises searched such as would afford him standing to challenge the search. The facts of this case do not, as he suggests, bring him squarely within the holding of *In re J. R. M., supra*, in which the item searched was the family car which defendant, the owner's son, used exactly as he would have had title been in him. Defendant's lack of standing renders a review of

the additional issues regarding the law of search and seizure raised in his brief on appeal unnecessary.

## II.

Defendant next contends that the trial court erred in admitting into evidence five photographic exhibits. These black and white photographs were taken by police officers at the scene of the crime after the bodies of the two victims had been removed. Paper silhouettes illustrate the positions of their bodies in two photographs. One shows the spot where Owen Kelly, a patron, was wounded, and another shows the position of tables relative to the front door of the tavern. The last shows a live shotgun shell lying on the floor near the front door.

Defense counsel objected to their admission on grounds that they were gruesome, obscene, and highly inflammatory and prejudicial, and offered to stipulate to anything the prosecutor hoped to prove by their use. All of the photographs were illustrative of testimony clearly relevant to the case, describing the approximate positions of the bodies of the dead and wounded and the place where the live shotgun shell was found.

■ The admission of photographs such as these rests within the sound discretion of the trial court. *State v. Strong*, 484 S.W.2d 657, 661[13–14] (Mo.1972); *State v. Hendrix*, 454 S.W.2d 40, 43[8] (Mo.1970). Their admission is proper if they tend to "throw any relevant light upon a material matter at issue." *State v. Moore*, 303 S.W.2d 60, 65[1] (Mo. banc 1957). "It is not a valid objection that witnesses have testified to matters shown by photographs because pictures give a much clearer impression of many things than any oral description and that is the reason for using them." *State v. Tyson*, 363 Mo. 1242, 258 S.W.2d 651, 654[3, 4] (1953); *accord, State v. Moore, supra* at 65[2].

In the *Moore* case several photographs of the deceased showing a wound that tore away the right side of the heart and part of her forearm and collapsed a lung were ad-mitted into evidence. The Supreme Court held that their admission was not error since, among other reasons, they "tended to corroborate the testimony of state's witnesses, and the state, having the burden of proving defendant's guilt beyond a reasonable doubt, should not be unduly limited as to the quantum of its proof." *State v. Moore, supra* at 65[2]. Further comments by the *Moore* court are appropriate to the case at bar. "If the exhibits satisfy the rule as to the admission of demonstrative evidence, it is not a sufficient cause for their rejection that the sight of them would tend to agitate the feelings of the jurors." *Moore* at 66[3]. "If the photographic views are shocking and horrible it is because the crime is one of that sort, whether described in words or pictures. Some phases of the oral testimony are as likely to cause agitation as the pictures." *Moore* at 66[5]. No photograph could have been more gruesome than the testimony of Officer Deckelman, one of the first police officers to arrive on the scene.

■ The trial court did not err in admitting the challenged photographs. They illustrated and corroborated the witnesses' testimony and helped establish facts such as the probable position of the person who fired the shots. The bodies and wounds of the victims were not shown. The point is ruled against defendant.

## III.

Also complained of on appeal is the admission into evidence of certain items of tangible and photographic evidence taken from the Banneker house on the morning of the arrest of the four other persons charged with this crime.

■ Defendant bottoms his objection upon the assertion that the items were irrelevant because they were not connected to the commission of the crime or to him and were highly prejudicial and inflammatory. Items are sufficiently connected to a defendant when they are found in the possession of his criminal associates. *State v. Cuckovich*, 485 S.W.2d 16, 23[12] (Mo. banc 1972). A thorough consideration has been

given to the issue of the admissibility of most of these same items in the companion case of *State v. Theodore Roosevelt Johnson, Jr.,* 539 S.W.2d 493 (Mo.App.1976), in which precisely the same objections were raised. It was there held the items involved were admissible. No factual distinction exists in this case that would compel a contrary result. The circumstances of their finding justify an inference of the likelihood or possibility of many of these items having been used in the preparation or commission of the crime. They are therefore admissible " 'for the purpose of showing availability to accused of the means of committing the crime in the manner in which it is shown to have occurred.' " *State v. Cuckovich, supra* at 23[12]. This is especially true of the hacksaw, the gun barrels and the shotgun stocks not objected to in the *Johnson* case. Numerous persons testified that the robbers were armed with sawed-off shotguns. It is well-settled that "[a]rticles showing motive, or malice, or intent, or knowledge or preparation, may be received in evidence if shown to be connected with the crime or with the accused." *State v. Evans,* 237 S.W.2d 149, 151[1, 2] (Mo.1951). Items found soon after a crime in the possession of a defendant's criminal associates are sufficiently connected to the defendant to be admissible in evidence against him. A hacksaw, gun barrels and gun stocks clearly indicate the availability of items used in the preparation of sawed-off shotguns and the items were therefore properly admitted. *State v. Evans, supra.*

■ A review of the record reveals the care exercised by the trial court in examining exhibits and excluding photographs depicting materials which referred to a black militant organization. The evidence received was competent and relevant and its admission therefore would not be erroneous even had it been prejudicial. *State v. Wells,* 367 S.W.2d 652, 655[9] (Mo.1963). Defendant's contention is without merit.

## IV.

■ Defendant states that it was error to permit an in-court identification by Sandra Clemens, an eyewitness, because to do so violated a court order issued on February 26, 1973. Subsequent to a hearing on the motion to suppress the identifications, the trial judge held that the lineups were properly conducted but found that Clemens and Brooks had not viewed any corporeal lineups. He issued the following order:

"Therefore, as to these two witnesses, Sandra Clemmons (sic) and Bonnie Brooks, the Court holds they cannot make an in-court identification until at trial the Court conducts a further *Wade-Stovall-U. S. v. King* hearing to determine whether their in-court identification is based upon a photograph of said defendants or an independent source from their knowledge of what they saw in Counsin (sic) Hugo's March the 18th, 1972. * * * the Prosecuting Attorney, his assistants, and the police in the preparation of this case are ordered *not to show* any photographs of any defendants to these two witnesses until the hearing. * * * "

Defendant also maintains that the portion of the order forbidding the authorities to show these witnesses pictures of defendant was violated. The instances to which he refers all occurred prior to the date of the court order. This contention is thus totally devoid of merit.

■ Bonnie Brooks did not testify for the prosecution. The prosecutor did call Sandra Clemens to testify but made no attempt to elicit an identification of defendant. Ms. Clemens was the last witness of the day and the court recessed immediately after she was excused. The record reveals that as soon as she finished testifying "she walked out and told the County Officer that that man was in there." When it became clear the next morning that she was again going to testify, defense counsel objected on the ground that the witness had been dismissed and was not subject to recall. This specific objection is not carried forward in the motion for a new trial or in the brief on appeal and is therefore deemed abandoned. *State v. Scott,* 515 S.W.2d 524, 527[4] (Mo.1974); *State v. Halk,* 524 S.W.2d 44, 48 (Mo.App.1975).

Sandra Clemens was permitted to testify. She stated that after she was stabbed she was taken into the back room. One robber was holding a gun on the tavern owner when another robber, who she subsequently identified as defendant, came into the back and spoke to the man holding the gun. "That's when I saw him. I remember his eyes and his mouth. And when I saw him yesterday I knew that's where I had seen him." She then on request pointed to defendant.

From the record it appears very likely that, by the time of trial, the court order had simply been forgotten. Defense counsel not only failed to call the order to the trial court's attention but also questioned the witness extensively regarding her opportunity to observe defendant at the time of the incident. The existence of the court order was not called to the attention of the trial court until the time of the motion for a new trial. In his brief on appeal, defendant states that since no hearing was held to determine whether there was an independent basis for an in-court identification, it was error to permit the identification. No supporting authority is cited. Defendant therefore has failed to comply with Rule 84.04(d) which requires in part a statement of what rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous "with citations of authority thereunder." *State v. Orr*, 493 S.W.2d 374, 375[2] (Mo.App.1973).

 Even had the point been preserved, defendant would not prevail. The hearing court issued the order to prevent the witness from making an in-court identification until it was established that there existed an independent basis for her identification. Her testimony prior to identifying defendant did establish such a basis. The purpose of the court order was therefore fulfilled and her identification was properly permitted. *State v. Ross*, 502 S.W.2d 241, 246[2] (Mo.1973). Through defense counsel's cross-examination of the witness the jury was made aware of her prior inability to identify defendant in pictures and of contradictions between her testimony in court and statements given previously in deposition. The weight to be given her testimony and identification was a decision properly left to the jury. *State v. Sigh*, 470 S.W.2d 503, 505[2] (Mo. banc 1971).

V.

Defendant also asserts as error the denial of his motion to suppress in-court identifications and testimony of lineup identifications because of allegedly unduly suggestive pretrial identification procedures and the absence of any source independent of the pretrial procedures that would support admissibility of the identifications. He also says the identifications were fatally tainted by local media accounts.

 Defendant's reliance for support upon the fact that the prosecutor on certain occasions showed photos of defendants to witnesses is misplaced. All of the occasions upon which the prosecutor employed such pictures occurred during trial preparation and long after the actual identification procedures. Defendant singles out for especially vigorous complaint a "reenactment" and says that it was very curious to have conducted it at the scene of the crime. The facts of this case were extremely complicated. Without diagrams, photographs and the like, it is difficult, if not impossible, to understand what occurred and how. It was essential that the prosecutor have a firm grasp upon the events of the incident so as to establish as concretely as possible what each of the five defendants was alleged to have done and where and when. Absent a reconstruction, he could not have presented his case to the jury in an intelligible manner. It is not curious that he felt it necessary to interview some witnesses at the scene. After the suspects had previously been firmly identified during properly conducted lineups, the use of photos of the five defendants to aid witnesses in describing what occurred was not objectionable. Defendant cites *People v. Jackson*, 391 Mich. 323, 217 N.W.2d 22 (1974) which says essentially that if a suspect is in custody and can be readily produced for a lineup, photo-

graphic identification should not be employed. This refers to initial identifications and was precisely the procedure followed here. Corporeal lineups containing other persons in addition to the suspects were conducted soon after they were taken into custody. There is no evidence that any suggestions were made to witnesses at the time. The injured who could not attend were shown photographs of these lineups rather than individual photographs of the five suspects. No case is cited or has been found that suggests that in preparing for trial a complicated case involving numerous defendants and witnesses, a prosecutor cannot use photographs but must gather defendants together for a properly conducted lineup each time an eyewitness is interviewed. The reenactment here was for the purpose of establishing how the crime occurred and the parts played by the various defendants. It was not meant for purposes of identification nor was it so used.

 Identifications obtained by procedures that were not impermissibly suggestive, as is the case here, are admissible. The record reveals no constitutional infirmity in the conduct of the lineups. Therefore, it was not error to overrule defendant's motion to suppress testimony of the extrajudicial identifications. *State v. Few*, 530 S.W.2d 411, 413[1] (Mo.App.1975). In addition, there was sufficient evidence that the in-court identifications of defendant by Miller and Kuper were based upon their observation of defendant at the time of the incident to overcome any taint from impermissibly suggestive pre-trial identification procedures. Even had the pre-trial procedures been found impermissibly suggestive, there was sufficient evidence of an independent basis for the in-court identifications to have overcome the taint and support their admissibility. *State v. Ross, supra*, 502 S.W.2d at 246[2].

## VI.

Defendant's next point attacks the refusal of the trial court to grant a continuance to prepare for the testimony of one Nathaniel Heard, a state's witness. This Point Relied On is not preserved for appellate review because there is no statement therein of wherein and why the court's ruling was in error. Rule 84.04(d). For analysis of the law on the granting of continuances and the exercise of discretion in this area by the trial judge applicable here, reference may be made to the opinion in *State v. Theodore Roosevelt Johnson, Jr.*, 539 S.W. 2d 493 (Mo.App.1976).

## VII.

 Defendant sets out in his brief on appeal seven quotations from the prosecuting attorney's closing argument to which he objects on the grounds that they were prejudicial, inflammatory and outside the scope of the record. Only two of the remarks were objected to at trial. The trial court in one instance admonished the jury to recall the evidence and in the other sustained the objection. The trial court's actions were sufficient under the circumstances to cure any error. The remaining statements of the prosecuting attorney complained of, which were interspersed among other portions of the argument, are as follows:

> "You have offenses like these, maybe the most drastic thing you have ever heard of, Hill and a bunch of savages cut people with knives, shoot people and when they leave Cousin Hugo's looks like a slaughter house. * * * Look at the photograph, look where the brain is, you can tell he put the gun right to the back of his head; * * * you don't run into something like this every day, * * * how one human being can go up to the barmaid and stab her and drag her intestines out. * * * Ladies and Gentlemen, you are going to have to take James Roy Hill off the streets forever. He has forfeited his right to walk the streets amongst civilized people. I mean we don't want him on the streets again, to put a gun to John Gallino's head and kill him!"

 No objection to these remarks was made at the time of trial and the motion for a new trial referred to the closing argument only in general terms. Com-

plaints as to parts of a closing argument not set forth in detail and with particularity in the motion for a new trial are not properly preserved. Rule 27.20(a); *State v. Spears*, 505 S.W.2d 92, 93[1] (Mo.1974). The nature of the prosecuting attorney's remarks, however, compels a consideration of the merits of the contention to determine whether a manifest injustice or miscarriage of justice occurred. Rule 27.20(c). Although considerable latitude is permitted a prosecuting attorney in closing argument, he must not lose sight of his obligation as set forth in *State v. Heinrich*, 492 S.W.2d 109, 114[8] (Mo.App.1973):

> "Under our system of criminal jurisprudence, the prosecuting attorney occupies a quasi-judicial position with reference to the prosecution of a criminal offense. He has the right and duty to prosecute with vigor and present all of the admissible evidence and legitimate arguments at his command showing guilt. But no less a duty rests upon him to vouchsafe the defendant a fair and impartial trial—based upon facts, not guesswork; legitimate inference from the facts, not prejudice; cool analysis and decision, not passion. He should always keep uppermost in his mind the axiomatic principle that all persons charged with crime are presumed to be innocent; that a fair and impartial trial is a constitutional guarantee of all defendants guilty or innocent; and that not an unimportant part of his obligation as a prosecutor is to see that these goals are reached in every case."

The state in its reply brief, both here and in a companion case arising out of the same set of facts, contends that "[o]f course, a prosecutor may argue the horribleness of the crime when addressing the issue of punishment." The cases cited fully support several well accepted rules regarding the prosecutor's closing argument, *e. g.,* he may properly comment upon the prevalence of crime and urge upon the jury law enforcement and the assessment of punishment; he may argue for severe punishment to deter the commission of similar offenses by others; and his argument is proper so long

as he stays within the record and reasonable inferences to be drawn therefrom. *State v. Sibley*, 411 S.W.2d 187, 189[5] (Mo. 1967); *State v. Evans*, 406 S.W.2d 612, 616[3] (Mo.1966); *State v. Jones*, 384 S.W.2d 554, 560[6] (Mo.1964); *State v. Allen*, 343 S.W.2d 63, 67[12] (Mo.1961); *State v. Eckenfels*, 316 S.W.2d 532, 536[9] (Mo.1958); *State v. Gay*, 523 S.W.2d 138, 144[15] (Mo. App.1975). These cases do not suggest, however, that improper remarks can be insulated from scrutiny merely by inclusion in the portion of argument relating to sentencing. The remarks objected to in the cases cited are not comparable to those in defendant's case. For example, in *State v. Jones, supra*, a case involving forgery of a check, the prosecuting attorney argued: " 'It is important to our community that in commercial life, matters that people rely on in every day affairs, that they be protected from this type of fraudulent activity.' " Finding this comment within the scope of permissible argument hardly supports the right to argue "horribleness" as the state appears to interpret the word. On the contrary, "[t]he loathsomeness of the crime * * * charged has a tendency to engender prejudice against its alleged perpetrator. That well-known fact places upon the State's attorney a duty to conduct the trial with the utmost fairness and scrupulously to avoid injecting into the minds of the jurors prejudicially incompetent matters that will further inflame them." *State v. Groves*, 295 S.W.2d 169, 174[9, 10] (Mo. 1956). "He may not * * * seek by inflammatory appeals to arouse in the jurors personal hostility toward or personal fear of the defendant. * * * Neither is it proper argument for a prosecutor to speculate as to the future possible acts or conduct of the defendant." *State v. Heinrich, supra*, 492 S.W.2d at 114[9].

■ The prosecuting attorney in the instant case referred to defendant as a savage, unfit to walk the streets with civilized persons. He stated that someone had dragged the barmaid's intestines out, called the juror's attention to brain matter in a photograph of the crime scene and, in addi-

tion, implied that defendant would have to be kept off the streets to prevent further killing, not by others but by defendant. In *State v. Morris*, 248 S.W.2d 847, 852[7–9] (Mo.1952), it was held to be inflammatory and prejudicial and probably reversible error if properly preserved for a prosecutor to argue that the jury should not give defendant an opportunity to go out and kill somebody else. Certain of the remarks in the instant case are of the same variety. In addition, the prosecutor dwelt with special vehemence upon the most brutal details of this admittedly violent and loathsome crime. Such an argument as this is inflammatory and likely to arouse the personal hostility of the jurors. Because the point was not properly preserved, however, we consider the improper argument in the light of the evidence presented and we conclude that the remarks do not meet the test of plain error under Rule 27.20(c) requiring a determination that the error charged has resulted in a miscarriage of justice. "When guilt is established by * * * overwhelming evidence no injustice or miscarriage of justice will result from a refusal to invoke the rule." *State v. Hurtt*, 509 S.W.2d 14, 15[2, 3] (Mo.1974). The evidence presented in this case amply supports the jury verdict and sentence. While we do not condone the prosecutor's remarks, we cannot find that they affected the outcome or caused manifest injustice. No injustice will result from affirmance of the conviction.

The judgment is affirmed.

DOWD and McMILLIAN, JJ., concur.