STATE of Missouri,
Plaintiff-Respondent,

v.

Joseph Robert MAYFIELD,
Defendant-Appellant.

No. 38313.

Missouri Court of Appeals,
St. Louis District,
Special Division.

Feb. 14, 1978.

Fordyce & Mayne, Leo V. Garvin, Jr., Clayton, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

JAMES RUDDY, Special Judge.

Defendant was found guilty by a jury of rape § 559.260 RSMo 1969 and sentenced to fifteen years with the Department of Corrections. He appeals.

The following facts most favorable to the verdict were presented at trial. The victim, H. G., age 27, was asleep in her bed with her eighteen month old child early in the morning of August 7, 1975. She was married but she and her husband were separated. Her four other children were asleep in another room. Between four and four-thirty a.m. defendant entered her bedroom by standing on a trash can and crawling through an open window in the children's bedroom, and then entering the room. She awakened and found a stranger standing over her. She screamed and he said "holler again and I'll kill you." He ordered her to get out of bed and told her he wanted her money and food stamps. She told him she had nothing, and he began looking through her closet, drawers, and in her purse. When he did not find anything, he stated

"This is rape." At that time she noticed that the handkerchief he was holding in his hand had a steak knife wrapped inside. He told her to lie down on the bed. She tried to change his mind by telling him there were lots of other women to be with and that she was seeing a doctor and intercourse would cause a lot of pain and bleeding. He proceeded to have intercourse with her, with the knife laying on the bed beside the baby who was by this time awake. When he was finished, he got up, stating, "I am gone," and departed through the kitchen door. Mrs. G. ran to her mother's apartment which was across the hall, and called the police. Two officers arrived and Mrs. G. described her assailant to them, and she was taken to Homer Phillips Hospital.

Either one or two days after the rape, Mrs. G. went to the police station where the officers prepared a composite portrait of her attacker. On August 19 she was asked to view a lineup. She selected defendant from the lineup as the man who raped her. However, defendant was not the original suspect but was in custody on a traffic charge when he was voluntarily placed in the lineup. Mrs. G. also stated she could identify defendant's voice if she heard it. After she identified defendant from the lineup, some detectives, Mrs. G., and defendant were in a room together. One of the detectives started to walk out. Mrs. G. said, "Don't leave me in here." Defendant said "That's all right, I have did what I wanted to now." Mrs. G. recognized the voice as that of the man who raped her. The officer who was conducting the lineup asked Mrs. G. if she was positive of the identification. The defendant was then placed under arrest, and was advised of his rights. Defendant indicated that he understood his rights.

Appellant's defense at trial was alibi. He presented three witnesses: his mother, girlfriend, and his girlfriend's sister. His girlfriend, Annie, and her sister, Rosie, testified that defendant was with them at a party on the evening of the rape. His girlfriend further testified that she and defendant were asleep together in his bed at the time of the rape. Annie's sister Rosie stated that defendant was in his apartment at 7:15 a. m. on August 7 and drove her to work that morning.

The jury returned the verdict on May 14, 1976. The court granted the defense additional time to file a motion for new trial. On June 14 leave was granted for attorney Leo V. Garvin to enter his appearance as attorney for defendant in this case (Cause No. 75–2286). However, the trial judge granted this leave on the condition that Mr. Garvin also enter his appearance in another matter concerning defendant (Cause No. 75–2287). That case consisted of three counts: (1) robbery first degree; (2) robbery first degree by means of a deadly and dangerous weapon; and (3) rape. All of these crimes were committed against one R. W. on August 1, 1975, less than one week before the crime at issue in this appeal. On June 21, 1976, the court granted Ben J. Weinberger, who had represented defendant in the trial of the instant case, leave to withdraw.

On June 25, 1976, Mr. Garvin filed a motion for continuance which alleged, inter alia, that defendant was unable to assist in the further defense of the charges against him due to incompetency. The motion further stated that the recently retained attorney was advised by the court that there was not enough time to obtain a transcript of the proceedings to assist in the preparation of a new trial, but that no further extension would be granted. Furthermore, the motion stated that the defense attorneys had obtained an order in connection with the companion case, Cause No. 75–2887 (the robbery and rape charges), permitting defendant to be examined by a psychiatrist, Dr. Edwin Wolfgram of St. Louis. Following this examination, the motion stated that it had been determined that defendant is mentally ill, unable to assist in his defense, and that this condition existed for at least a year prior to the examination. The motion for continuance concluded in the following manner:

"WHEREFORE, defendant prays, by and through his said attorneys, the court

issue its order continuing further proceedings herein, pending a hearing on the competency of the defendant to stand trial and otherwise assist in the preparation of his defense."

On June 25, 1976, allocution, judgment, and sentencing took place. Mr. Garvin stated then that the motion for new trial, prepared by Mr. Weinberger, was to be taken up over his objection. He explained that since he did not represent defendant at trial, and did not have enough time to obtain a transcript after trial, and defendant was unable to assist him because he was incompetent, he had no information from which to prepare a motion for new trial. In order to preserve the incompetency issue for appeal (which was not alleged in the motion for new trial) he filed this motion for continuance.

The trial judge denied the motion for continuance. He stated that defendant had been given a psychiatric examination in connection with this cause while confined at the State Mental Hospital in Fulton, Missouri during December, 1975 and January, 1976. Mr. Garvin stated that Mr. Weinberger's file contained none of this information and that he knew nothing of this prior psychiatric exam. The court imposed a sentence of fifteen years pursuant to the jury verdict. The judge ordered that the companion case, Cause No. 75–2287 concerning the robbery and rape of R. W. be returned to the criminal assignment division for further proceedings.

Defendant presents four points on appeal. We first deal with the challenge relating to defendant's competency.

Defendant claims that it was plain error for the trial court to deny defendant's motion for a continuance, pending a hearing on defendant's competency, when there was, what he asserts to be, sufficient evidence for the judge to suspect that defendant was incompetent to stand trial.

There are two occasions when a hearing on competency is required: (1) when the psychiatric report is contested, as stated in Section 552.020(6) RSMo 1969; See, e. g., *State v. Vansandts*, 540 S.W.2d 192, 201[1] (Mo.App.1976); and (2) where the circumstances at a criminal trial create a "bona fide doubt" of an accused's fitness to proceed. *Pate v. Robinson*, 383 U.S. 375, 385, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *Harkins v. State*, 494 S.W.2d 7, 13[2] (Mo. 1973). See generally *State v. Vansandts*, 540 S.W.2d 192, 201[1, 2] (Mo.App.1976). Here the first psychiatric report was not contested so the judge was not required to conduct a hearing under the first theory. *Collins v. State*, 479 S.W.2d 470, 471[2] (Mo. 1972). Furthermore, the record does not disclose any other circumstances which should have caused the trial judge to harbor a "bona fide doubt" of defendant's competency. The defendant did not behave erratically before the court, nor did his counsel during trial express doubts as to his client's competency. *Miller v. State*, 498 S.W.2d 79, 85 (Mo.App.1973).[1] "The test of competency is whether the accused has sufficient ability to consult with his lawyer with a reasonable degree of rational understanding and whether he had a rational as well as factual understanding of the proceedings against him." *Jones v. State*, 505 S.W.2d 96, 98[3] (Mo.App.1974); *Boyer v. State*, 527 S.W.2d 432, 436 (Mo.App.1975). The trial court had every reason to believe defendant met this standard.

1. Regarding the question of when a psychiatric exam is required, the United States Supreme Court recently stated: "[E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but . . . even one of three factors standing alone may, in some circumstances, be sufficient. There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated. That they are difficult to evaluate is suggested by the varying opinions trained psychiatrists can entertain on the same facts." *Drope v. Missouri*, 420 U.S. 162, 180, 95 S.Ct. 896, 908, 43 L.Ed.2d 103 (1975). The truth of this last statement is apparent in the record here, where a total of three psychiatrists' reports are in variance with each other.

■ Defendant's theory is that the trial judge should have suspected that the defendant was incompetent at three points in time during the proceeding. The first point would be sometime after the medical report from Fulton State Hospital was received on February 2, 1976. The medical report, signed by Dr. Rohidas Patil, contained the following information. "Mr. Mayfield knows why he is here and realizes the seriousness of the charges against him. Mr. Mayfield states that he is innocent and said he was not involved in the alleged offense. Mr. Mayfield can discuss his legal status in a rational manner and it is considered that he has the capacity to confer with his counsel in preparing and implementing his own defense. His knowledge of courtroom proceedings and functions appear [sic] to be good." The report further stated:

"There was no evidence of any bizarre behavior. It appears that there was no indication that he was suffering from a psychotic mental disease or defect at the time of the alleged offense.

VIII. FINDINGS

1) That the accused has a mental disease or a defect within the meaning of Section 552.010. There is a schizophrenia, a chronic undifferentiated type, in remission.

2) That the accused has the capacity to understand the proceedings against him and can assist in his own defense.

3) That the accused did know and appreciate the nature, quality and wrongfulness of his alleged conduct and was capable of conforming his conduct to the requirements of the law.

4) That the accused does not require hospitalization pending further proceedings.

IX. RECOMMENDATION

It is recommended that Mr. Mayfield be returned to court for disposition of the charges pending against him. Continue Thorzine Concentrate, 200 mg. A.M. and 200 mg. at h. s.

(Signed) Rohidas Patil, M.D.
Resident in Psychiatry
Fulton State Hospital."

Defendant challenges the validity of the report. He claims that because 40% of it is devoted to a "recitation of the charges against defendant and excerpts from police reports of the incidents from which the charges against the defendant arose", and because it recommended medication even though stated that defendant did not require hospitalization, that the judge should have been wary of its other findings. To this we cannot agree. Defendant claims that it was plain error for the trial court to proceed with the trial of defendant, and deny defendant's motion for a continuance, in light of the alleged defects in this report. We have read the entire report and feel that the trial judge was amply justified in relying on its findings. It was a complete and thorough report, and furthermore, its findings were not contested at trial. The judge did not err in failing to grant a hearing. *Barbarick v. State*, 496 S.W.2d 843, 845[2] (Mo.1973).

The next juncture in the trial proceeding to which defendant points occurred after the jury was selected. The following discussion took place outside the hearing of the jury:

"PROSECUTOR: Your Honor, I was going to make a request prior to the swearing of the jury that the Court interrogate the defendant, Ronald Mayfield, in regard to his understanding and the nature of the proceedings that are taking place in this courtroom; based upon a conversation that he had with his attorney, Mr. Weinberger, in his presence last night, I concluded that he did not understand whatsoever as to with regard to what is going on.

"THE COURT: You want to make a comment on that request?

"MR. WEINBERGER: I concur with the State's attorney and will further advise the Court that I believe that the defendant is a bit confused as to the nature of the proceedings, although he seems to be somewhat oriented, he doesn't seem to be fully oriented as to what is taking place here, and I believe that he is sort of confused.

"THE COURT: Bring the defendant out. Is your witness in the witness room?

"PROSECUTOR: I believe she should be upstairs.

"MR. WEINBERGER: It doesn't make any difference if some of my witnesses are present at this point?

"THE COURT: Yes, it does. They will have to go outside. Sir, step up. Mr. Mayfield, step up here. State your name.

"THE DEFENDANT: Joseph Mayfield.

"THE COURT: Okay. How old are you, sir?

"THE DEFENDANT: Twenty-seven.

"THE COURT: How far did you go in school?

"THE DEFENDANT: Freshman in college.

"THE COURT: What college was that, Mr. Mayfield?

"THE DEFENDANT: UMSL was the last one.

"THE COURT: You did attend UMSL?

"THE DEFENDANT: Yes.

"THE COURT: Do you know the man on your right?

"THE DEFENDANT: Yes, I do.

"THE COURT: What is his name?

"THE DEFENDANT: Ben J. Weinberger.

"THE COURT: And who is he?

"THE DEFENDANT: My lawyer.

"THE COURT: Okay. Now, what are we doing here today? You are here for what to happen? What did you come over here for?

"THE DEFENDANT: I'm not really sure today.

"THE COURT: Did your lawyer tell you you were to stand trial today?

"THE DEFENDANT: Yes.

"THE COURT: That you are on trial?

"DEFENDANT: Yes.

"THE COURT: Do you understand what happened yesterday, that we selected a jury to try you?

"THE DEFENDANT: Yes, I do.

"THE COURT: And you understand that the case is suppose to start in a few minutes, this morning. Those people that just left the room are your witnesses, are they not?

"THE DEFENDANT: Yes, they were.

"THE COURT: Okay. Your request will be denied.

"PROSECUTOR: Well, Your Honor—

"THE COURT: Have a seat.

"PROSECUTOR: —I will say at this time—request the Court inquire as to whether or not Mr. Mayfield is receiving medication that was recommended by the doctors at Fulton, 400 milligrams of Thorazine a day.

"THE COURT: Mr. Mayfield, are you taking your medicine that the doctor gave you?

"THE DEFENDANT: Yes, I am.

"THE COURT: Just have a seat.

"MR. WEINBERGER: Let me ask you a question, Mr. Mayfield: are you under medication now?

"THE DEFENDANT: Yes, I am.

"MR. WEINBERGER: Do you fully understand what we are about to do here this morning?

"THE DEFENDANT: Yes, I do.

"MR. WEINBERGER: Do you know why you're here now?

"THE DEFENDANT: Yes.

"MR. WEINBERGER: Do you know where you are at now?

"THE DEFENDANT: Yes, I do.

"MR. WEINBERGER: Where are you?

"THE DEFENDANT: In the courtroom 20.

"THE COURT: That's right. You're in courtroom 20. I am Judge Tillman. And we're going to have your trial. I am going to see that you get a fair trial, you understand that?

"THE DEFENDANT: Yes, sir."

The defendant claims that "the trial court satisfied himself of defendant's competence by merely interrogating defendant through a line of leading questions." He claims it was plain error for the trial court to proceed through trial and later deny defendant's motion for a continuance when

defendant had stated he "really wasn't sure today" why he was in the courtroom. We find that the trial court did not err. From the entire series of questions and answers, and his personal observations of defendant's demeanor, the trial court could reasonably believe that defendant was competent to assist in his own defense. *Boyer v. State*, 527 S.W.2d 432, 437[5] (Mo.App.1975).

The third point during the trial that defendant claims should have signalled the trial court that defendant was incompetent was on the day of sentencing. The trial had ended, and on the day of sentencing defendant moved for a continuance "pending a hearing on the competency of the defendant to stand trial and otherwise assist in the preparation of his own defense." Within the motion for continuance defendant's counsel asserted that they had obtained another psychiatric exam of defendant in connection with the companion case, and that the new report concluded that "defendant is mentally ill and unable to assist in this defense, and that this condition has existed for at least the year immediately preceding said examination."

As noted in the recitation of facts, before the trial judge denied the motion for continuance, he pointed out to defense counsel that prior to the trial, defendant had undergone a psychiatric examination in Fulton. Defendant's counsel professed ignorance of this prior exam, as no record of it was in the file that he received from the attorney who handled the trial of the case.

■ We conclude that the trial court did not err in denying the motion for continuance of the sentencing pending a competency hearing. The trial court has wide discretion in deciding when to grant a continuance and we will not interfere in the absence of abuse of discretion. *State v. Carroll*, 543 S.W.2d 48, 49[1, 2] (Mo.App. 1976). The trial court did not abuse its discretion in denying the defense counsel's motion. It was reasonable for him to believe that defendant was competent to stand trial, based on the psychiatric report from Fulton, his personal interrogation of defendant after the jury was selected, and

his personal observation of defendant throughout the trial. Defendant's motion for new trial contained an unverified allegation that there had been another psychiatric exam of defendant. The defendant did not accompany his written motion with a copy of the report, although the trial court asked him if he had "anything additional to the written motion" to present. The court was not required to accept as self-proving the unverified allegation that there was new evidence of defendant's incompetency. See *State v. Purvis*, 525 S.W.2d 590, 593[2, 3] (Mo.App.1975).

■ Defendant has filed with this court a supplemental transcript which contains the text of the February 3, 1977 hearing of the companion robbery and rape case (in which Judge Satz found defendant not guilty due to mental disease), and also contains two psychiatric reports, one dated July 9, 1976, and the other dated December 7, 1976. None of this evidence was before the trial court, either during trial which was from May 12–14, 1976, or in the motion for new trial, filed June 9, 1976, or on the day of sentencing, June 25, 1976, when defendant moved for a continuance. We are limited solely to the record made in the trial court, and do not consider the other evidence. *State v. Andrade*, 534 S.W.2d 595, 597[1] (Mo.App.1976).

Defendant raises three other points. All of these are portions of the trial alleged to be plain error. Defendant is forced to rely on plain error because no objections were made at trial to the alleged misconduct, nor were any of the three points raised in the motion for new trial. Rule 27.20(c) allows the court to consider points not properly preserved for review when the court deems that "plain errors resulting in manifest injustice or miscarriage of justice" have occurred.

The first of these three alleged errors concerns the assistant circuit attorney's alleged comment on the defendant's failure to testify. During closing argument, the defendant's counsel argued that the victim's identification of defendant was suspect because she had failed to mention that her attacker had worn "thick, heavy glasses".

"PROSECUTOR: Your Honor, please, I will object to that. There is no testimony or evidence that he wears heavy glasses.

"THE COURT: The jury is instructed to disregard the last comment.

"MR. WEINBERGER: Mr. Mayfield, face the jury.

"PROSECUTOR: Your Honor, please, I will object to that. Counsel had every opportunity—

"THE COURT: Sustained.

"MR. WEINBERGER: You gentlemen can view this defendant and see for yourselves that—

"PROSECUTOR: Your Honor, please, I will object to this particular line of questioning. Counsel had every opportunity—

"MR. WEINBERGER: Is Your Honor going to deny me my argument before this court, before the jury?

"THE COURT: I sustained that objection, counsel."

Defendant contends that the prosecutor's completed sentence would have been, "Counsel had every opportunity to place defendant on the stand." Hence, he contends she created reversible error because she made a comment on the failure of the accused to testify.

■ The cases are clear that only direct and certain, *State v. Rothaus*, 530 S.W.2d 235, 237[1] (Mo. banc 1975); *State v. Hutchinson*, 458 S.W.2d 553, 555[3] (Mo. banc 1970), nonambiguous and unequivocal, *State v. Frankoviglia*, 514 S.W.2d 536, 541[5] (Mo.1974), comments on the accused's failure to testify will be considered a violation of defendant's constitutional and statutory privilege against self-incrimination. Only by the most remote stretch of the imagination could one infer that the comment here at issue was directed at the accused's failure to testify. The point is without merit.

■ The next point defendant raises is that the trial court erred in permitting the prosecutor to comment on the failure of the defendant to call a witness equally availa-

ble to both parties. This point is not preserved for review because there was no objection at trial. *State v. Harms*, 507 S.W.2d 29, 32[8] (Mo.App.1974).

■ We will assume that defendant was raising the point for consideration as "plain error" but carelessly omitted the word "plain" from his point relied on. The alleged comment by the prosecutor on defendant's failure to call a witness equally available to both parties took place in the following context:

". . . he opened the door. Now, that man had to have his fingerprints—

"PROSECUTOR: Your Honor, I will object.

"MR. WEINBERGER: Somewhere and somehow—this is argument.

"PROSECUTOR: There has been no testimony with regard to fingerprints in this case.

"MR. WEINBERGER: I have a right to argue my case.

"THE COURT: Overruled. Go ahead.

"MR. WEINBERGER: There has been no fingerprints introduced in this case, none.

"PROSECUTOR: Your Honor, please, I will once again—counsel could have had the Evidence Technician people in.

He did not so desire.

"THE COURT: Overruled.

"MR. WEINBERGER: I want to preserve my time, and I will ask the Court to admonish counsel from interrupting me.

"THE COURT: I will refuse to do that. Go ahead."

Defendant claims that the prosecutor's statement, "counsel could have had the Evidence Technician people in" is an impermissible comment on defendant's failure to call them as witnesses. We disagree. Rather, the prosecutor was objecting to defendant's argument of matters not in evidence, and the trial court should have sustained her objection. In overruling it, the court committed error in defendant's favor. Defendant cannot complain about error committed in his favor. Rule 26.06, *State v. Martin*, 530 S.W.2d 447, 451[14] (Mo.App.1975);

*State v. Foster*, 490 S.W.2d 662, 663[2] (Mo. App.1973). The point is without merit.

The final point defendant raises is the "abusive, unrestrained language" in the prosecutor's closing arguments which resulted in "an inflammatory and prejudicial atmosphere and foreclosed the possibility of a fair and impartial trial." The prosecutor referred to defendant as "some type of monster" and as a "base animal" and told the jury that, "the only way you are going to protect all the H. G.'s in this world is to place that man . . . in the penitentiary."

Again, the defendant relies on "plain error", Rule 27.20(c), since no objection was made below. In the first place, if the remarks resulted in such an inflammatory and prejudicial error, it seems certain that an objection would have been made at trial.

■ A statement in closing argument will rarely affect the substantial rights of a defendant so as to result in plain error. *State v. Brown*, 528 S.W.2d 503, 505[2] (Mo. App.1975). And even if the point is preserved, it has been held to be proper for the prosecutor to comment upon the prevalence of crime in the community and he or she may argue for severe punishment as a deterrent to others so long as he or she stays within the record and reasonable inferences to be drawn therefrom. *State v. Hill*, 539 S.W.2d 521, 529[22] (Mo.App.1976).

■ Although a prosecutor should not apply unbecoming names to a defendant, *State v. Burnett*, 429 S.W.2d 239, 246[10] (Mo.1968) not every instance of improper argument requires a mistrial, *State v. Raspberry*, 452 S.W.2d 169, 173[7] (Mo. 1970), or a new trial. Courts have held that such name-calling, while ill advised, is not prejudicial, especially where there is evidence to support such a characterization. Thus, calling a defendant such names as "young punk", "lying thief", "desperado", "hoodlum", "drunken killer", and "pimp" has been reviewed by our courts and not resulted in reversal. See *State v. Poole*, 556 S.W.2d 493, 495 (Mo.App.1977). We have read the text of the closing argument and do not feel that the appellations given by the prosecutor to the defendant in context of the entire argument were "so offensive or of such gravity as to have impaired defendant's fundamental right to a fair trial", and thus were not plain error. *Cloud v. State*, 507 S.W.2d 667, 669[5] (Mo.App.1974).

The judgment is affirmed.

CLEMENS, P. J., DOWD and SMITH, JJ., and WILLIAM M. CORRIGAN, Special Judge, concur.