STATE of Missouri, Respondent,

v.

Jerry Ronald RAY, Appellant.

Nos. 38570, 38571.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 1, 1980.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 19, 1980.

Application to Transfer Denied
July 15, 1980.

Judith B. Sklar, Asst. Public Defender, Eleventh Judicial Circuit, St. Charles, for appellant.

John Ashcroft, Atty. Gen., Marjorie Wholey Haines, Asst. Atty. Gen., Jefferson City, for respondent.

STEPHAN, Presiding Judge.

Defendant-appellant Jerry Ray was convicted by a jury of the offenses of rape and first degree robbery by means of a dangerous and deadly weapon. He was sentenced to imprisonment for a term of fifteen years for the first offense and ten years for the second, the sentences to be served consecutively. We affirm.

The crimes occurred on September 21, 1975, in St. Charles, Missouri. The victim and her male companion were asleep in her apartment bedroom when they were awakened by an intruder wearing a green ski mask and flourishing a small handgun. The intruder tied them up, raped the victim twice and took a number of items—including a television, a radio, stereo equipment and several rings—from the apartment. The victim estimated that the incident lasted from approximately 1:00 a. m. until 5:00 a. m.

State's witness Jerry Messick lived in the apartment adjacent to that of the victim. Messick testified that he returned to his apartment from work on September 20 (the night before the incident) at 8:00 or 9:00 p. m., accompanied by his boss. They met defendant and Dennis Beardsley, both friends of Messick, at the apartment. A short time later, Messick, his boss and Beardsley went drinking at a number of St. Charles bars. Messick apparently did not see defendant that evening after that point. Messick testified that he passed out at approximately 2:30 a. m. and woke up the next morning shortly before 8:00 a. m. sitting with Beardsley in the latter's automobile, parked in front of Messick's apartment. The two entered the apartment and found defendant sitting in the living room. Shortly thereafter two officers from the St. Charles County Sheriff's Department came to the apartment and questioned defendant, Messick and Beardsley in a routine canvassing of the neighborhood in an investigation of the incident. Officers returned later that day at approximately 12:45 p. m., searched Messick's apartment with his approval and found, in a back bedroom, a number of items which were later identified as those taken from the victim's apartment. Messick testified that he had not been in the bedroom since he returned to the apartment that morning and had not seen the articles before that time. Upon frisking defendant, the officers found a green ski mask in his rear pocket. Defendant, Messick and Beardsley were all placed under arrest.

Defendant presented an alibi defense. He testified that he and Beardsley had been waiting for Messick in Messick's apartment on the evening of September 20; that Beardsley suggested that they break into the adjacent apartment, where the victim lived; that they did so shortly before 8:00 p. m.; and that they "just looked around" and left without taking anything (although defendant had touched a number of items). Defendant testified that when Messick and his boss went drinking that night, Beardsley drove him back to St. Louis to Dismas House (a halfway home for men recently released from prison), where defendant had been staying for a short time. Four witnesses testified that they saw defendant at Dismas House either late in the evening of September 20 or on the morning of September 21, as early as 6:15 a. m. and at various times throughout the morning. Dismas House records—in the form of signature sheets which residents were required to sign whenever they entered or left the build-

ing—indicated that defendant returned to the home at 8:50 p. m. on September 20 and did not leave thereafter until 11:25 a. m. the next morning. Defendant testified that at that time Beardsley picked him up and drove him back out to Messick's apartment in St. Charles; that he was shown the stolen property in Messick's bedroom and touched a number of articles; that the sheriff's officers arrived shortly thereafter, discovered the property and arrested the three. Defendant explained the presence of the ski mask in his pocket by stating that Messick had given it to him that morning as Messick and Beardsley were showing him the stolen property.

At trial, the victim could provide no facial identification of defendant as the intruder because the intruder had been masked. Defendant was linked to the crimes by voice, height and clothing identifications of defendant by the victim and/or her companion; defendant's possession of the ski mask; the presence of defendant's fingerprints in the victim's apartment and on the stolen articles in Messick's apartment; and a cigarette butt, of the brand smoked by defendant, found in the victim's apartment. Furthermore, the victim testified that the intruder did not have the smell of alcohol on his breath; Messick testified that he and Beardsley had been drinking heavily the evening of September 20, but that he had not seen defendant drink at all at that time. During closing argument, the prosecutor countered defendant's alibi defense by pointing out that, although Dismas House records indicated that defendant was signed in between 8:50 p. m. and 11:25 the following morning, no one reported seeing him there between the critical hours of 12:00 midnight and approximately 6:15 a. m. Implying that the sign-out system was not infallible, the prosecutor argued that defendant deliberately set up his alibi defense by making himself visible to a number of people at the house late on September 20 and early the next morning, and was able to sneak out of the house and return to St. Charles between the hours of 1:00 a. m. and 5:00 a. m. (Defendant estimated the travel time between the two locations to be thirty to forty-five minutes.)

In his first assignment of error, defendant contends that the trial court erred in denying his motion to disqualify the jury panel on the ground that, at the time of trial, the victim's sister worked in the office of the St. Charles County Sheriff and was in charge of contacting the prospective jurors for duty and delivering the venire list to the court. In that capacity, argues defendant, she was in a position to influence the panel. In examining the record of the trial proceedings, however, we have been unable to find such a motion. If such motion (or any objection to the jury panel) was made during voir dire, it is unavailable to us, for the court reporter was instructed by defense counsel not to transcribe that part of the proceedings. The issue was first raised in the record in defendant's motion for new trial, wherein he made the allegation concerning the employment of the victim's sister and her position of potential influence. No evidence was introduced, and such allegation, obviously, does not prove itself. "This court is precluded from consideration on review of any facts not set forth in the approved transcript or supplemental transcript. Section 512.110 RSMo 1969; Rule 81.12. To do so would involve the rankest kind of judicial speculation and conjecture." *State v. Hatten*, 561 S.W.2d 706, 713 (Mo. App.1978). See also *State v. Simpson*, 529 S.W.2d 19, 21 (Mo.App.1975). Inasmuch as the transcript provides no basis whatsoever upon which we can review the point, it is ruled against defendant.

In his second assignment of error defendant contends that certain portions of the prosecution's closing argument were prejudicial in that they were inflammatory and unduly personalized the issue of defendant's guilt or criminal proclivities to the jurors. During that argument, the prosecutor told the jury that:

"It is your decision if you want this type of man coming from—crossing the bridge, coming to our county."

Defense counsel objected to the statement. The objection was overruled and the prosecutor continued:

"If you want this type of man crossing the bridge and coming into our county and raping women in St. Charles County and [sic] let him go free. You will have to make that decision. It is your decision. If you want this man out walking the streets, find him not guilty."

No objection was made at this point.

█ The prosecutor is to be given wide latitude in his argument to the jury, and the trial court is vested with broad discretion in determining whether he has exceeded the permissible scope of that argument. The trial court's ruling will be disturbed only when there has been a clear abuse of discretion. *State v. Nichelson*, 546 S.W.2d 539, 543 (Mo.App.1977). The prosecutor may argue to the jury, inter alia, the necessity of strong law enforcement as a deterrent to crime, the prevalence of crime in the community and the evils resulting to society from the jury's failure to suppress that crime. *State v. Steward*, 564 S.W.2d 95, 99 (Mo.App.1978); *State v. Raspberry*, 452 S.W.2d 169, 172–173 (Mo.1970). However, he may not seek, by inflammatory appeals, to arouse in the jurors a personal hostility toward or a personal fear of a defendant, *State v. Steward*, supra, *State v. Poole*, 556 S.W.2d 493, 495 (Mo.App.1977), nor demand punishment of a defendant to prevent that defendant's future criminal conduct. *State v. Raspberry*, supra.

█ In the light of the above, we find no abuse in the trial court's overruling of defendant's objection (on unspecified grounds) to the first statement. We further believe an extended discussion of the point to be unnecessary. In short, we find the remark free of the prosecutorial abuses proscribed in the cases, supra. Particularly when read in context, the comment is of mild effect in contrast to arguments which have been held to warrant reversal and a new trial. See, e. g., *State v. Groves*, 295 S.W.2d 169, 173–174 (Mo.1956) and *State v. Tiedt*, 357 Mo. 115, 206 S.W.2d 524, 526–529 (Mo. banc 1947), on which defendant strongly relies.

As noted, counsel failed to object to the second set of statements made by the prosecutor. Defendant nonetheless urges that this court consider the question as plain error under Rule 27.20(c), and we do so, bearing in mind that a statement in closing argument rarely affects a defendant's "substantial rights" so as to constitute plain error. *State v. Mayfield*, 562 S.W.2d 404, 412 (Mo.App.1978).

█ Defendant objects primarily to the prosecutor's admonition that "If you want this type of man crossing the bridge and coming into our county and raping women in St. Charles County and [sic] let him go free." Generally, we again contrast this statement to the arguments considered in the *Groves* and *Tiedt* cases, supra. The statement directs no odious personal epithets at defendant such as would engender a personal hostility toward him in the minds of the jurors. Cf. *State v. Mayfield*, 562 S.W.2d 404, 412 (Mo.App.1978), in which defendant was termed "some type of monster" and a "base animal"; and *State v. Hill*, 539 S.W.2d 521, 529–530 (Mo.App. 1976), in which defendant was referred to as a "savage." In both those cases, the appellate court rejected the argument that the prosecutor's remarks constituted plain error. The argument here does not raise the specter of violence directed at the jurors and their families, nor does it necessarily make conjecture that this particular defendant would engage in future criminal misconduct upon being acquitted. Rather it takes cognizance of the problem of rape in St. Charles County generally and could be understood merely to urge defendant's conviction as a deterrent to "this type of man." See also *State v. Crawford*, 478 S.W.2d 314, 320 (Mo.1972), in which a similar argument[1] was held a "permissible call for law enforcement." We therefore do not believe the remarks were " 'so offensive or of such gravity as to have impaired defend-

1. " 'A society, a community only gets the type of law enforcement that it wants and you gentlemen are the Society. You are going to decide in this case whether this community wants this type of conduct going on and whether you want this type of man to be walking the streets and—.' "

ant's fundamental right to a fair trial.'" *State v. Mayfield*, supra, 412; *State v. Hill*, supra, 530. The point is ruled against defendant.

In this connection, defendant further contends that the prosecutor's closing statement also contained several impermissible references to defendant's prior convictions, about which defendant had testified on direct examination. The prosecutor told the jury that:

"The Defendant's own testimony convicted him. He has no credibility. He's been found guilty on burglary three times and armed robbery one time. He has no credibility."

Defense counsel's objection on the ground that the statement was "in complete contradiction to the instruction the Court has given" was sustained. (There is no indication what "instruction" counsel was referring to. It is apparently not one of the instructions given the jury.) The prosecutor later stated:

"I believe that you can't believe a thing he says."

and:

"Their minds do not work like ours." Such comments, argues defendant, made either direct or implicit reference to his prior convictions not for the purpose of impugning his credibility but to attack his character generally and imply "guilt by prior offenses." However, defendant not only failed to object to the latter two statements; he failed to raise the issue in his motion for new trial or in a separate Point Relied On in his brief. Defendant merely raises the issue for the first time in the argument section of the preceding point and again urges that this court consider it as plain error.

■ It is, of course, permissible to make reference to a defendant's prior conviction insofar as it reflects upon his credibility as a witness when he has chosen to testify. *State v. Coleman*, 524 S.W.2d 27, 32 (Mo.App.1975); *State v. Brogan*, 488 S.W.2d 623, 625 (Mo.1973); *State v. Lawrence*, 423 S.W.2d 807, 809 (Mo.1968). The only statement in which the prosecutor

made direct reference to defendant's convictions, supra, was immediately preceded and followed by the words "He has no credibility." Furthermore the remarks came in the context of a general attack on the credibility of defendant's testimony insofar as it was inconsistent with that of Messick and a deputy sheriff. The prosecutor's second comment cannot conceivably be termed anything but an attack on defendant's credibility. The prosecutor's third statement appears in the transcript nineteen pages after his comment on defendant's prior convictions, with defense counsel's closing argument having intervened. Having read the statement in context, we are satisfied that it could not reasonably be understood as a reference back to that comment and an indirect attack on defendant's character because of his prior convictions. In short we believe that no "manifest injustice or miscarriage of justice" has resulted in this regard.

■ In his final assignment of error, defendant contends that the trial court erred in failing to grant his motion for new trial on the ground that the state had failed to disclose during discovery that state's witness Jerry Messick had a felony charge pending against him in St. Charles County at the time of defendant's trial. Defendant argues that such information was material and was a proper subject for impeachment of the witness in that it reflected on his motives for testifying favorably to the state. Defendant in fact now contends on appeal that on August 2, 1976, eleven days after the conclusion of defendant's trial, the assistant prosecuting attorney who tried defendant's case filed an amended information in the circuit court reducing the charge against Jerry Messick from sale to possession of over thirty-five grams of a controlled substance; that Messick pleaded guilty to the reduced charge on that date; and that at the subsequent sentencing hearing, another assistant prosecuting attorney explained the reduction of the charge as follows:

"No, I would like to point out one thing to the Court, the reduction from sale to a

possession was for the reason that this individual did testify on behalf of the State in another case and help the State get a conviction on a Jerry Ray, a rape and robbery and that was the basis for that."

In support of the above allegations, defendant on October 6, 1978 attempted to file five exhibits with this court, attached to a Motion to Submit Exhibits. Four of the proposed exhibits are purportedly duplicates of circuit court records establishing the pendency of the original charge against Messick at the time of defendant's trial. The fifth proposed exhibit is a copy of the transcript of the sentencing hearing and contains the above quote. Defendant's Motion to Submit Exhibits was taken with the case. We now deny that motion and rule the point against defendant.

The problem facing this court in reviewing defendant's argument is identical to that confronting the court in *State v. Collett*, 526 S.W.2d 920 (Mo.App.1975), and we regard that case as dispositive. In *Collett*, the defendant similarly argued that a state's witness, who had participated in a robbery and assault for which defendant was being tried, had been given a probationary sentence in return for his testimony against defendant. Defendant filed a "motion to perfect transcript," in which he requested the appellate court to make the circuit court record in the witness' case part of the transcript on defendant's appeal. The court denied the motion, holding "We may consider only those matters presented on the record made in the lower court." Id., 929.

Although the fact of the pendency of the felony charge against Messick was known to defendant at the time the motion for new trial was filed and heard, defendant failed to make the records in Messick's case a part of this record at that stage. Likewise, the record is devoid of any efforts in connection with the motion for new trial to develop what influence, if any, the felony charge had on Messick's trial testimony. Cf. *State v. Brooks*, 513 S.W.2d 168 (Mo. App.1974). Defendant's present insinua-

tions that Messick's testimony may have been colored by prosecutorial promises which may have been made to him are without any support in the record before this court.

The judgment is affirmed.

KELLY and STEWART, JJ., concur.